[File No. Cr. 216]

STATE OF NORTH DAKOTA, Respondent, v. LLOYD HASTINGS, Appellant.

(41 NW2d 305)

Opinion filed Jan. 31, 1950.  Rehearing denied Mar. 6, 1950

*Strutz & Jansonius* and *Sinness & Duffy,* for appellant.

*Wallace E. Warner,* Attorney General, *Douglas B. Heen,* State's Attorney and Special Assistant State's Attorney, *F. T. Cuthbert,* for respondent.

BURKE, J.  Lloyd Hastings was convicted of the crime of obtaining money by false pretenses, in the District Court of Ramsey County.  He has appealed from the judgment of conviction.  Two grounds for the reversal of the judgment are specified and argued in the defendant's brief.  They are: (1) that the District Court of Ramsey County was without jurisdiction to try and determine the case, (2) that the verdict of the jury is contrary to the evidence.

The defendant, Lloyd Hastings, at the time of the transaction out of which this prosecution arose, was a licensed fur buyer

in business for himself. Melvin Olson was a licensed fur buyer employed by the Grand Forks Hide and Fur Co. On March 17th, 1947, early in the morning, Hastings called at Olson's home in Devils Lake in Ramsey County and inquired if Olson would be interested in buying muskrat hides. He stated that he didn't have the hides but that he knew where he could get some. When Olson indicated an interest in buying, Hastings asked where Olson would be that evening and Olson informed him that he would be at Drake in McHenry County.

That evening Hastings and Olson met at Drake. Hastings had with him some two thousand muskrat hides contained in three sacks. Together they took the hides to the show room of the International Harvester Company in Drake where the hides were sorted and examined by Olson. After some bargaining they agreed upon an average price of $1.15 each for the hides. Hastings demanded Olson's personal check in payment rather than a draft upon Olson's employer. Olson gave Hastings his check for $2,576.00 telling him that there was not sufficient money upon deposit to meet the check but that arrangements would be made to pay it. Hastings drove back to Devils Lake that evening. Olson telephoned his wife directing her to go to the bank the next morning and draw a draft on his employer for an amount sufficient to cover the check.

The next morning Hastings and Mrs. Olson met at the bank in Devils Lake shortly after it had opened. Mrs. Olson deposited the draft on her husband's employer and Hastings cashed Olson's check receiving the full amount thereof in currency.

A few days later Olson delivered the hides to his employer, the Grand Forks Hide and Fur Co. The owner of the fur company refused to accept them for the reason that they were summer or early fall furs, and had therefore been taken or trapped in violation of the state game laws. Thereafter he refused to pay the draft drawn on the company by Mrs. Olson. Olson brought the hides back to Devils Lake and turned them over to the State Game and Fish Department as contraband furs taken out of season.

The information in the case charged that the defendant had committed the crime of obtaining money by false pretenses in

Ramsey County, North Dakota, by cashing a check, the signature to which had been obtained by a false pretense. The false pretense alleged was that the defendant "represented that he had muskrat furs which he was entitled to sell and that the same had been taken legally and obtained legally, whereas in truth and in fact, the said furs were taken contrary to law and out of season as allowed by the laws of the State of North Dakota and were contraband and known by said defendant to be contraband and were purchased by said *Melvin Olson in good faith believing the same to be lawful and legitimate sale of furs that were legally entitled to be sold,* and by such false pretenses said defendant obtained the signature of said Melvin Olson as aforesaid."

It was established by the evidence that the check was obtained in McHenry County and that it was cashed in Ramsey County. Defendant contends that if any crime was committed it was completed when the check was obtained and that therefore jurisdiction to try the case lay exclusively in McHenry County. Defendant, however, was not charged with obtaining a check or the signature to a check by a false pretense. He was charged with obtaining money by cashing a check the signature to which had been obtained by means of a false pretense. This distinction was considered by this court in State v. Stewart, 9 ND 409, 83 NW 869. In that case the defendant was charged with obtaining money from Sargent County by means of a false and fictitious claim for a bounty for the destruction of gophers. There the defendant contended that, inasmuch as it was alleged that the false claim had been presented to the county auditor and that officer had issued a warrant thereon, it was apparent upon the face of the indictment that not money, but property, to wit: the warrant, had been obtained by reason of the false claim and that the indictment was accordingly bad. This court disposed of this contention by saying "A sufficient answer to the objection now under consideration is that the defendant is not charged with obtaining property from the county auditor, or money from the county treasurer, as individuals, but is charged with obtaining money from Sargent County, by aid of the false certificate in question; and the allegations of the indictment that the certificate was presented to the auditor, that in reli-

ance thereon the latter issued his warrant on the treasurer, and that the treasurer paid the money to the defendant in reliance on the warrant, merely embrace the steps by which the defendant fraudulently obtained the money from the county. The ultimate fact is the obtaining of the money from Sargent county. That is charged, and also the exact manner by which it was obtained."

In Bates v. State, 124 Wis 612, 103 NW 251, 4 Ann Cas 365, the Wisconsin Supreme Court had before it the question of whether the evidence was sufficient to support a charge of obtaining money under false pretenses. The proof established that money had been obtained by the defendant's agents in the State of Iowa upon drafts mailed in the State of Wisconsin by a man named Proctor. In that case the court said:

"If, then, we could consider the delivery to the post office the point of time at which Proctor parted with something to defendant, there would still be no obtaining of money, but merely orders to pay money—an entirely different article of property, for the obtaining of which defendant could be prosecuted notwithstanding either a conviction or an acquittal of obtaining money. Comm. v. Coe, 115 Mass 481. Of this offense defendant is not here charged and cannot be convicted. Very clearly, then, if money was obtained at all by defendant, it was when it was paid to either Haggerty or Bascom at defendant's direction, through the medium of various intervening steps taken by Proctor to carry out that direction. Whether or not an offense of obtaining a draft or check is committed, the crime of obtaining money may also be committed when such order is paid. Comm. v. Wood, supra; State v. Palmer, 40 Kan 474, 20 Pac 270; Burton v. U. S. 196 US 283, 25 Sup Ct 243, 49 L ed 482." See also State v. Smith, 162 Ia 336, 144 NW 32, 49 LRA (NS) 834.

We think it clear, upon the authority and the reasoning of State v. Smith, supra, that the information charges the commission of the crime of obtaining money by false pretenses and that the evidence demonstrates that the crime was committed, at least in part, in Ramsey County. That is sufficient to vest jurisdiction to try the defendant in Ramsey County under Section 29–

0304 NDRC 1943 which provides: "When a crime or public offense is committed in part in one county and in part in another, or when the acts or effect thereof constituting, or requisite to the consummation of, the offense occur in two or more counties, the jurisdiction is in either or any of said counties."

It is also the contention of the defendant that the evidence is insufficient to sustain the conviction in that there is no evidence that defendant made any representations as to the quality of the hides he offered for sale and that the evidence affirmatively shows that the purchaser of the hides relied solely upon his own judgment in buying them. The contention that there was no representation as to the quality begs the main question in the case. The false representation charged is that the defendant "represented that he had muskrat furs which he was entitled to sell and that the same had been taken legally and obtained legally, when in truth and in fact, the said furs were taken contrary to law and out of season as allowed by the State of North Dakota and were contraband. Section 20–0102 NDRC 1943 provides: "The ownership of and title to all wild birds, fish and wild animals within the borders of this state shall be in the state for the purpose of regulating the enjoyment, use, possession, disposition, and conservation thereof. Any person catching, killing, taking, trapping, or having in his possession any wild birds, fish, or wild animals protected by law at any time or in any manner shall be deemed to have consented that the title thereto shall remain in this state for the purpose of regulating the taking, use, possession and disposition thereof."

Section 20–1001 NDRC 1943 provides: "The commissioner, deputy commissioner, or any bonded game warden shall seize all wild birds, wild animals, or fish, or any part thereof, taken, killed, or possessed, or transported contrary to law. . . ."

Section 20–0701 NDRC 1943 provides: "Any person, firm, or corporation owning silver black, or blue foxes, or the pelt of any wild animal lawfully obtained, shall have the same property rights therein as those enjoyed by the owners of domestic animals."

Section 20–0702 NDRC 1943 provides: "No person shall hunt, shoot, trap, or take, in this state, any minks, muskrats, skunks,

badgers, weasels or raccoons, except during the open or lawful season thereon as established in this chapter . . . ."

From a consideration of the foregoing statutes it is apparent that no person in this state can acquire title to or the right to sell muskrat pelts unless such pelts are those of animals taken in open season and that pelts of animals taken out of season are subject to seizure by the state or are contraband as alleged in the information.

Section 51-0114 NDRC 1943 provides: "In a contract to sell or a sale, unless a contrary intention appears, there is:

1. An implied warranty on the part of the seller that in case of a sale he has a right to sell the goods . . . ."

There is contained in every offer to sell goods of any kind a representation by the seller that he has a right to sell the same. Thus the question of whether the evidence sustains the finding of the jury, that the defendant made a false representation, depends entirely upon whether it would justify a finding that the muskrat pelts were from animals which were taken out of season and whether that fact was known to the defendant at the time the sale was consummated. Three witnesses for the plaintiff, Martin Myhre, a deputy game warden, Ben Boss, a fur dealer of twenty years experience, and Alex Marsden, a fur dealer of twenty-five years experience, who had examined the pelts, all testified that in their opinion all but one of the pelts had been taken before the muskrat season opened on December 1st. They stated that the degree of primeness of the fur demonstrated that a majority of the pelts had been taken in the summer and early fall. From the evidence in the case it also appeared that a Lester Rubin had been associated with the defendant in the sale of the muskrat pelts. He was with the defendant at Devils Lake when he first interviewed Olson. He was with the defendant when he secured the pelts and when he finally sold them to Olson. Both Mr. and Mrs. Olson testified, that after the defendant had been arrested, Rubin had stated to them in the defendant's presence that they (Rubin and the defendant) had not intended to stick Olson with the rats, that they belonged to Sam Gersham (the owner of the Grand Forks Hide & Fur Co.). In view of this testimony we think there is

ample evidence to support both the jury's finding that the pelts were taken out of season and the defendant was aware they had been so taken.

Is there sufficient evidence to justify a finding that Olson believed defendant's implied representation that he had a right to sell the pelts and that Olson relied upon that belief? Defendant says that the fact that Olson, a man of many years experience as a fur buyer, insisted upon inspecting the pelts before buying, and spent some three hours examining and grading them before the transaction was closed shows that he relied solely upon his own judgment as to their quality and value. If the alleged false representation concerned only quality and value there would be much to support the defendant's argument. Here the alleged false representation concerned *title and the right to sell, not quality.* Good quality was only an incident insofar as its absence in a sufficient degree might demonstrate lack of title. Unless Olson upon his inspection discovered absence of good quality in that degree, the fact that he examined the pelts for the purpose of deciding how much he would pay for a good title to them is not material. The question is not whether Olson should have discovered the falsity of the representation, or whether a man of his experience reasonably could have been expected to have discovered it. The question is whether he did in fact discover it. In State v. Stewart, 9 ND 409, 83 NW 869, this court said: "The doctrine of recent cases is that the fact that investigation and the exercise of ordinary prudence would have disclosed the falsity of the pretenses will not render them insufficient to support a conviction; and, more than that, it is not necessary that the pretense be sufficient to deceive a person of ordinary prudence, if in fact it deceived the person defrauded, and it is only such pretenses as are in themselves absurd and incredible that will not support a conviction; and, further, the question of whether the false pretense was relied upon and was the inducement by which the property was obtained is for the jury."

The jury in this case had before them the evidence of the inspection of the pelts, the circumstances in which the inspection was made and the experience of Olson as a fur buyer on one side. On the other side they had the fact that Olson gave his

personal check for in excess of twenty-four hundred dollars for the pelts and his testimony that he believed and relied upon the belief that defendant had the right to sell them. Upon this state of the record it was for the jury to determine where the truth lay.

The judgment is affirmed.

NUESSLE, C. J., MORRIS and CHRISTIANSON, JJ., and HUTCHINSON, Dist. J., concur.

GRIMSON, J., disqualified, did not participate.