Ray DUGAS and Janet Dixon,
Plaintiffs and Appellees,

v.

Dean FELTON, Defendant and Appellant.

Civ. No. 9254.

Supreme Court of North Dakota.

Dec. 23, 1976.

Kenneth M. Moran, Jamestown, for plaintiffs and appellees.

Hjellum, Weiss, Nerison, Jukkala & Vinje, Jamestown, for defendant and appellant; argued by Russell G. Nerison, Jamestown.

ERICKSTAD, Chief Justice.

This appeal from a judgment on a jury verdict is taken by the defendant in a wrongful death action. It is urged that the trial court erred in 1) ruling that a party-witness could not be impeached by reference to a felony conviction, 2) instructing the jury that a substantial loss will be presumed in a wrongful death action, and 3) denying the defendant's motion for a mistrial based on alleged improper and prejudicial statements by counsel for plaintiffs in his closing argument. The judgment was on a jury verdict awarding damages, liability having been admitted prior to trial.

Ray Dugas and Janet Dixon brought this wrongful death action under Chapter 32–21, N.D.C.C., to recover damages suffered by them resulting from the death of their daughter, Sherry Lee Zimbelman, who, along with her husband and infant son, was killed, on May 9, 1975, when the automobile in which she was riding was involved in a head-on collision with an automobile driven by the defendant, Dean Felton. Felton also died as a result of the collision.

Parties representing Felton's interests admitted liability, so the case went to trial solely to determine the amount of damages.

Shortly after trial began, counsel for Felton discovered that Dugas had been convicted in Oregon, in 1974, of conspiracy to commit forgery, a felony under the laws of that state.

The court ruled, upon motion of Dugas' counsel, that evidence of this conviction could not be used to impeach Dugas' testimony. Felton's counsel, at that time, made an offer of proof of copies of various documents relating to Dugas' conviction, and urges that this evidence should have been admitted.

These documents, before us as Court's Exhibit 1, include a copy of a Judgment of the Circuit Court of the State of Oregon for Multnomah County, finding Raymond Louis Dugas guilty of the crime of conspiracy, a violation of the following Oregon statute:

"(1) A person is guilty of criminal conspiracy if with the intent that conduct constituting a crime punishable as a felony or a Class A misdemeanor be performed, he agrees with one or more persons to engage in or cause the performance of such conduct." Oregon Revised Statutes § 161.450(1).

Under present North Dakota law, evidence of any criminal conviction may be used to impeach a witness. *State v. Moe*, 151 N.W.2d 310 (N.D.1967); *Killmer v. Duchscherer*, 72 N.W.2d 650 (N.D.1955).

Under the Federal Rules of Evidence for United States Courts and Magistrates, a somewhat different rule applies:

"For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment." Fed. Rules Evid. Rule 609(a), 28 U.S.C.A.

Federal Rule 609(a) is quite similar to its counterpart in the North Dakota Rules of

Evidence recommended by the Joint Committee of the State Bar Association of North Dakota and the Judicial Council of North Dakota and adopted by this court, to be effective at a date to be determined later.[1]

Under this rule, crimes used for impeachment are divided into two classes: (1) felonies and (2) crimes involving dishonesty or false statement. Crimes not involving these elements give rise to discretion in the trial court as to admissibility. The Conference Committee Notes to the Federal Rules have this to say in explanation of the separate classification:

"The admission of prior convictions involving dishonesty and false statement is not within the discretion of the Court. Such convictions are peculiarly probative of credibility and, under this rule, are always to be admitted. Thus, judicial discretion granted with respect to the admissibility of other prior convictions is not applicable to those involving dishonesty or false statement." H.R.Rep.No. 1597, 93rd Cong., 2d Sess. (1974), U.S. Code Cong. & Admin.News 1974, pp. 7051, 7103, reprinted following Fed.Rules Evid.Rule 609, 28 U.S.C.A.

■ Therefore, under present North Dakota case law and Proposed Rule 609(a), evidence of a crime involving dishonesty or false statement, such as forgery, may be used to impeach a witness under cross-examination.

■ The scope of the inquiry is, however, limited:

"We are of the opinion that for the purpose of impeachment the most reasonable practice, and the one generally prevailing, minimizing prejudice and distraction, is that beyond the name of the crime, the time and place of conviction, and the punishment, further details may

not be inquired into. McCormick, Evidence § 43, at 92–93 (1954)." *State v. Moe, supra,* at 320.

■ What is unclear in this case is just what is the "name of the crime" which may be inquired into. Counsel for Dugas states in his brief that he would advise his client to answer "no" when asked if he had been convicted of *conspiracy to commit forgery,* since the Oregon court conviction is of *conspiracy.*

This is a somewhat anomalous situation, as the name of a crime as spelled out in a statute generally is an indication of the culpability requisite for guilt and would impart sufficient information for a jury to consider it in determining a witness's credibility. No such indication is present in this conspiracy conviction, as the intent element necessary for such a conviction depends upon the crime the conspiracy is entered into to commit. Oregon Revised Statutes § 161.450, *supra.*

Court's Exhibit 1 includes a copy of the indictment leading to Dugas' conviction, which charges that the conspiracy was entered into with the intent to commit Forgery in the First Degree. Oregon Revised Statutes § 165.013(2).

For the purposes of impeachment, we believe that it would have been proper to describe the crime in this case as the crime of *conspiracy to commit forgery.* Permitting the cross-examiner that leeway does not violate the policy of *State v. Moe, supra,* as prejudice and distraction would be kept to a minimum.

Having concluded as we have, it would have been improper for Dugas to have denied that he had been convicted of the crime of conspiracy to commit forgery.

Accordingly, we find that the trial court erred in its ruling that defense counsel could not impeach Dugas by bringing out

1. "RULE 609. *Impeachment by Evidence of Conviction of Crime.*

"(a) *General rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the crime (1) was punishable by death or imprisonment in excess

of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment."

his conviction of conspiracy to commit forgery.

■ Plaintiffs contend, however, that any error in refusing to admit this evidence is harmless error and should not result in a reversal.

The determination of damages in this action depended almost entirely on the jury's perception of each plaintiff's relationship with Sherry Zimbelman. Virtually all evidence submitted by plaintiffs involved each parent's relationship with Sherry. As Dugas and Dixon had been divorced for some time prior to Sherry's death, it could be expected that Mrs. Dixon would have little direct knowledge of the nature and quality of the father-daughter relationship between Dugas and Sherry. Indeed, the transcript of her testimony shows no reference to *Dugas'* relationship with Sherry. Neither does the testimony of Mrs. Eloise Knoffsinger, Dugas' mother, mention Sherry's relationship with her parents beyond agreeing that she was "a dutiful daughter to them".

Thus the jury had only Dugas' unimpeached testimony from which to determine his injuries resulting from his daughter's death.

Some of this testimony was as follows:

"Q. Well, were you able to visit her during her marriage?

"A. Sure.

"Q. How often did you visit her?

"A. Two or three times a week, or sometimes they visited me the same.

.     .     .     .     .

"Q. Did you ever give Sherry and her husband any money?

"A. Yes, sir.

"Q. Would you explain that to the jury?

"A. Well, Sherry was what you call a silversmith. I mean, she made jewelry. She made turquoise jewelry, silver jewelry, gold jewelry, and I loaned her twenty-five hundred dollars to buy some silver and, well, I have loaned them—I loaned Wayne two thousand dollars to pay his child support from a previous marriage. He was making the money but he left

with me on a trip for four or five months to Florida and stopped his business so I could get to know him before my daughter and him got married.

.     .     .     .     .

"Q. When she was a girl, was she popular? Did she have friends?

"A. She was popular. She had all kinds of friends—slumber parties. She made homecoming queen, Valentine Ball queen—well, she didn't make the Valentine Ball queen because she turned it down because, I think she was coming to see me at the time. She was a very popular girl. Bashful, but she was popular."

Mr. Dugas' testimony describes a very close relationship with his daughter, which, if believed by the jury, could well have substantially affected the award of damages. Had the jury known of Dugas' conviction of the crime of conspiracy to commit forgery, the jury might not have believed that the relationship between father and daughter was as Dugas represented, and that might have influenced the size of the verdict and thus affected substantial rights of the defendant. Rule 61, N.D.R.Civ.P. We accordingly hold that the error was not harmless.

It is therefore necessary to remand this case for a new trial on the issue of damages.

■ The appellant also ascribes error to that portion of the instructions to the jury stating that "A substantial loss will be presumed". The paragraph of the jury instructions containing that phrase reads as follows:

"In an action for damages for wrongful death the measure of the damages to be awarded is the amount you find proportionate to the injury resulting from the death to the persons entitled to the recovery. Damages may be awarded only for the pecuniary loss or detriment suffered by a surviving heir, whether or not such loss or detriment could have been anticipated. You are instructed that pecuniary

loss need not be established by proof in dollars and cents. A substantial loss will be presumed. Damages in any case must be reasonable and may not be greater than the amount claimed by the plaintiff."

This court has repeatedly held it not to be error where the instructions incorporated a sentence identical to the one objected to here, at least where the instructions are construed as a whole. *Perleberg v. General Tire and Rubber Co.*, 221 N.W.2d 729 (N.D. 1974); *Grenz v. Werre*, 129 N.W.2d 681 (N.D.1964).

The language of the disputed instruction was introduced into North Dakota law in 1958:

"Pecuniary loss need not be established by proof in dollars and cents. A substantial loss will be presumed. *Checketts v. Bowman*, 70 Idaho 463, 220 P.2d 682." *Henke v. Peyerl*, 89 N.W.2d 1, 11 (N.D. 1958).

Our research of this point through the Idaho case cited in *Henke* takes us back to an early Idaho case, which says:

"It is also well recognized that, where the death of a child is caused by the negligent and wrongful acts of the defendant, the parent is entitled to recover more than nominal damages." *Golden v. Spokane & Inland Empire R. Co.*, 20 Idaho 526, 118 P. 1076, 1077 (1911).

This development of the use of "substantial loss" in our case law is consistent with the definition of substantial damages as:

"A sum, assessed by way of damages, which is worth having; opposed to nominal damages, which are assessed to satisfy a bare legal right. . . ." Black's Law Dictionary 469 (Rev. 4th ed. 1968).

While we believe that the proper meaning of the word "substantial" is best shown when contrasted with "nominal", we find that the instruction, when viewed as a whole, was entirely proper. *See Perleberg v. General Tire and Rubber Co., supra; Grenz v. Werre, supra.*

The argument has been made that the presumption of substantial damages, even if

necessary as applied to the death of a minor child, is not necessary when the decedent is an emancipated, married daughter. This argument is not convincing. The difficulty in proving a dollar and cents value of anticipated services of an emancipated child is not significantly less than that of proving the value of the services of a younger child.

As we have already concluded that this cause must be remanded for a new trial, the third issue, regarding whether the court erred in denying Felton's motion for a mistrial based upon alleged prejudicial misconduct by counsel for the plaintiffs need not be decided.

The judgment of the trial court is reversed and the case is remanded for a new trial.

VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.