BASIN ELECTRIC POWER COOPERA-
TIVE, Plaintiff and Appellee,

v.

Edwin C. PAULSON, a/k/a Edwin Paul-
son, and Laura C. Paulson, a/k/a Laura
Paulson; and Alice Therissa Paulson
and Gladys Alpha Paulson; Defendants
and Appellants.

BASIN ELECTRIC POWER COOPERA-
TIVE, Plaintiff and Appellee,

v.

Richard E. ANDERSON and Charlotte
A. Anderson, Defendants and
Appellants,

and

State of North Dakota, Department of
University and School Lands,
Defendant.

BASIN ELECTRIC POWER COOPERA-
TIVE, Plaintiff and Appellee,

v.

Donald E. PAULSON and Jean Paulson,
Defendants and Appellants.

BASIN ELECTRIC POWER COOPERA-
TIVE, Plaintiff and Appellee,

v.

LuVerne WILKE, a/k/a LaVerne Wilke,
and Aldores Klain, Defendants
and Appellants.

Civ. Nos. 9684–9687.

Supreme Court of North Dakota.

Feb. 28, 1980.

Malcolm H. Brown of Bair, Brown & Kautzmann, Mandan, for plaintiff and appellee.

Joseph A. Vogel, Mandan, for defendants and appellants.

VANDE WALLE, Justice.

This is a consolidated appeal involving land owned by Edwin C. Paulson and Laura C. Paulson, husband and wife ("Edwin Paulson") and land owned by Edwin C. Paulson with Alice Therissa Paulson and Gladys Alpha Paulson; land owned by Donald E. Paulson and Jean Paulson ("Donald Paulson"); land owned by Richard E. Anderson and Charlotte A. Anderson and the State of North Dakota, Department of University and School Lands ("Anderson"); and land owned by LuVerne Wilke and Aldores Klain ("Wilke"); collectively referred to as "landowners." The appeal is from the judgments and orders denying new trial entered by the McLean County District Court on July 31, 1979, in the four land-condemnation cases which had been consolidated for trial.

Basin Electric Power Cooperative ("Basin") initiated these condemnation actions in September of 1978 to acquire a 125-foot easement across the landowners' properties on which Basin intended to construct a 230-kilovolt alternating-current transmission line. The landowners rejected Basin's offer for the easements and demanded a jury trial.

At the trial, testimony was offered by the landowners and expert appraisers for both sides as to damages from condemnation. The presentation of the cases was concluded and the jury retired for deliberation. During the course of deliberation, one of the jurors left the jury room and was inadvertently locked out of that part of the courthouse containing the jury room. The juror was later readmitted to that part of the building containing the jury room through another door and rejoined the other jurors prior to the jury's return to the courtroom with its verdicts. After the verdicts were returned, the jurors were polled and each indicated that such were his or her verdicts.

Following the return of the verdicts, the landowners in one motion moved for a new trial, pursuant to N.D.R.Civ.P. 59(b), on the grounds that there was insufficient evidence to justify the verdicts; that the verdicts were contrary to the law in the cases; and that there was misconduct on the part of the jury. The motion for new trial was denied by the district court. Appeal has now been taken by the landowners from the judgments and the orders denying new trial.

Our first issue for consideration is whether or not the district court erred in failing to grant the landowners' motion for new trial where the jury awarded greater monetary damages for the land taken as easements across the holdings of Edwin Paulson and Wilke than testified to by the witnesses.

The jury awarded $9,562 for the taking of the Edwin Paulson property, or $532 more than the highest value placed on the property by the opinion of any witness. On the Wilke property the jury awarded $5,661 for the taking, or $225 more than the highest value placed on the property by the opinion of any witness. The awards for the taking of the property owned by the other landowners were within the range of the witnesses' testimony. In addition to the damages awarded for the taking, the jury

awarded severance damages in the following amounts: $891 on the Edwin Paulson, Alice Paulson, and Gladys Paulson property; $1,912 on the Edwin Paulson property; $1,611 on the Donald Paulson property; $1,598 on the Anderson property; and $849 on the Wilke property.

The general rule in this State is that an award in a condemnation case will be sustained if it is within the range of testimony of the witnesses. *Hultberg v. Hjelle,* 286 N.W.2d 448 (N.D.1979); *State v. Livingston,* 270 N.W.2d 556 (N.D.1978); and *Northern States Power Company v. Effertz,* 94 N.W.2d 288 (N.D.1959).

Obviously the landowners did not appeal the jury's error in order to reduce their own awards.[1] The landowners raised the issue of excessive awards to show that because the jury did not properly perform its function in awarding damages for the taking of two of the parcels it can also be inferred that the jury acted improperly in awarding severance damages on all the properties. In support of this contention the landowners cite *Commonwealth, Dept. of Hwys. v. Stephens Estate,* 502 S.W.2d 71 (Ky.1973). In that case, the jury determined the "after" value of property on which an easement had been granted to be $800 in excess of the highest figure testified to by any witness. The Kentucky Supreme Court believed that "Such a verdict, evidencing that the jury did not follow the instructions in one respect, places the whole verdict in doubt." 502 S.W.2d at 73. This led the Kentucky court to reverse the entire verdict.

Apparently in *Stephens Estate, supra,* a form of verdict was submitted whereby if the jury did find for the landowners it was to give a "before" value, an "after" value, and a "difference" for the verdict. When the jury fixed an "after" value that was not sustained by the evidence, the validity of the "difference" (the award) was also in doubt.

In the case at hand, the jury was not specifically required by the form of jury verdict to make a determination of the "before" value and the "after" value; instead, the jury was asked to determine compensation for the land taken and damages for severance. An error in determining the amount for the taking of the easement does not have the same prejudicial effect as the error of the Kentucky jury in determining the "after" value of the condemned property. The awards here are for different purposes and the trial court, in compliance with Section 32–15–22, N.D.C.C.,[2] instructed the jury to treat them separately.[3]

---

1. Whether or not the landowners could even raise this issue as error where it redounds to their benefit may be open to question. See 5 Am.Jur.2d, *Appeal and Error,* § 784. *But see Commonwealth, Dept. of Hwys. v. Stephens Estate,* 502 S.W.2d 71 (Ky.1973). Nevertheless, because the landowners have raised this as error in order to contest the severance damages awarded, we do not consider the propriety of alleging the excess damages awarded for the taking.

2. Section 32–15–22 provides, in part:

   "The jury, or court, or referee, if a jury is waived, must hear such legal testimony as may be offered by any of the parties to the proceedings and thereupon must ascertain and assess:

   .    .    .    .    .

   "5. As far as practicable, compensation must be assessed separately for property actually taken and for damages to that which is not taken."

3. The trial court's instruction to the jury on this point reads:

   "*SEVERANCE DAMAGES*

   "Our law provides that if the land taken constitutes only a part of a larger parcel of land owned by the landowner, any damages which may accrue to the portion of land not sought to be taken shall also be separately ascertained and assessed by the jury as 'severance damages.'

   "Thus, in this case the land taken constitutes only a part of a larger parcel owned by the landowners. Therefore, the landowners are entitled to compensation, not only for the market value of the land actually taken by Basin Electric, but also any such additional amount as will be equivalent to any lowering of the market value of their remaining land caused by the taking.

   .    .    .    .    .

   "*SEVERANCE DAMAGES ASSESSED SEPARATELY*

   "Severance damages must be ascertained and assessed by you separately, and, there-

■ We assume, without determining,[4] that the compensation for land taken was above the evidence; but that assumption does not place the validity of the other compensation awards or the severance awards in doubt. These are different awards, and each of them was within the range of the testimony. The awards for severance damages may not have been as large as the landowners wished, but they were within the range of the evidence. It was not unreasonable for the jury to assess nominal severance damages when it is considered that the two experts testifying for the power company appraised severance damages at zero. As noted by this court in *Northern States Power Company v. Effertz, supra,* an award in a condemnation case will be sustained if it is within the limits of damages testified to by the witnesses unless the verdict is so flagrantly against the weight of the evidence that it appears the jury was actuated by bias or prejudice. There is no indication in this case that the jury disregarded the court's instructions in assessing severance damages or damages for the taking of the other three properties, nor that the awards were so flagrantly against the weight of the evidence. We do not agree that because of a possible error in assessing some of the compensation awards it can be inferred that the jury acted improperly in awarding severance damages. On this issue the district court did not abuse its discretion in denying the landowners' motion for new trial.

■ The landowners also argue that the jurors did not properly perform their function because the awards for severance damages on all five of the properties are a percentage of the amounts for the taking. The landowners believe that this shows that some sort of compromise was arrived at in reaching the verdicts. If the verdicts were indeed compromise verdicts, they should be reversed. As noted by this court in *James Turner & Sons v. Great Northern Ry. Co.,* 67 N.D. 347, 374, 272 N.W. 489, 502 (1937):

> "Wherever it appears that a verdict is a compromise verdict, that is, where it is apparent that some of the jurors have conceded their conscientious belief that the defendant ought to prevail to the end that an agreement might be reached, the whole verdict is tainted and will be set aside."

■ We do not believe the evidence in the case at hand supports a conclusion that the verdicts were compromise verdicts. The mere fact that the awards for severance damages were percentages of the awards for the taking is not conclusive proof. Any figure can be computed as a percentage of another.

A stronger case for a conclusion that the verdicts were compromise verdicts might exist if the percentages were uniform on all the awards, but this is not the situation. The severance awards for the Edwin Paulson properties and the Anderson property

---

fore, when you have agreed upon the amount of any such severance damages, your foreman should insert the same on the verdict form after the words 'Severance damages.' If no severance damages are determined to have been incurred by the landowners, insert the word 'None.'"

4. Although we assume for purposes of this appeal that the two awards were not within the range of testimony, a supportable argument can be made that the awards were within the evidence. As to both parcels for which compensation was given in excess of the estimated value, there was testimony concerning the quality of the land taken and its suitability for farming. The jury may have considered this testimony in determining the value of the property. The propriety of the jury's considering

these factors is supported by the instruction given, without objection:

"*ADDITIONAL MATTERS TO BE CONSIDERED*

"In determining the market value of property, you may consider not only the opinions of the various witnesses who testified as to value, but also all other evidence in the case which may aid in determining value, such as location of the property, the surroundings and general environment, and peculiar suitability of the property for particular uses, and the reasonable probabilities as to potential future uses, if any, for which the property was suitable or physically adaptable and for which it in all probability would become available within a reasonable time after the date of taking; all as shown by the evidence to have existed at the time of taking."

were 20 percent of the awards for the taking. The severance award for the Donald Paulson property was 30 percent of the taking award, and on the Wilke property the severance award was only 15 percent of the award for the taking. We believe the calculations of the landowners are sheer speculation and do not support a conclusion that the verdicts were compromise verdicts.

As their final issue on appeal the landowners contend that a new trial is required because of alleged misconduct on the part of one of the jurors in separating herself from the rest of the jurors after the cases were submitted to them for deliberation.

■ We believe the landowners have waived the right to raise this point. The landowners and their attorney were aware that one of the jurors had separated herself from the rest of the jurors prior to the time the jury returned to the courtroom and presented its verdict. If they believed there had been any misconduct on the part of the juror that would prejudice the verdicts, the landowners should have brought this to the attention of the trial judge when they first became aware of it. In *Braun v. Riskedahl*, 150 N.W.2d 577, 582–583 (N.D. 1967), this court stated:

"Ordinarily, the rule is that where a party wishes to take advantage of irregularities occurring during the course of a trial, either on the part of the court, the jury, the parties, or anyone acting for or on their behalf he must do so at the time they occur, to the end that the court may take appropriate action if possible to remedy any prejudice that may have resulted."

The purpose for this rule was set forth in an earlier North Dakota case. In *Kinneberg v. Kinneberg*, 8 N.D. 311, 79 N.W. 337 (1899), this court stated:

"It is a well-settled and wholesome rule of practice that a motion for a new trial based upon the misconduct of the jury must be accompanied by an affirmative showing that such misconduct was unknown to the moving party before the final submission of the case. This rule proceeds upon the principle that one who has knowledge of facts which would vitiate the verdict should bring such facts to the attention of the court at the earliest possible moment, to the end that the fault may be corrected, and, if this is not done, he is deemed to have waived the right to object; or, as sometimes expressed, he is not permitted to conceal the knowledge of the facts, and take the chance of the verdict being favorable to him, and then, if unfavorable, have it set aside on grounds which he has concealed." 8 N.D. at 314, 79 N.W. at 337.

It is true that in *Kinneberg* the court was concerned with misconduct occurring prior to the submission of the case to the jury, but we believe the reasons expressed for the necessity of bringing allegations of misconduct immediately to the attention of the trial court are just as applicable to allegations of misconduct occurring during the course of the jury's deliberation.

■ The prevailing party does have the burden to prove that the misconduct was not prejudicial [*James Turner & Sons v. Great Northern Ry. Co., supra*], but the decision of the landowners to wait before informing the trial judge of the alleged misconduct made it more difficult for Basin to meet its burden. Had the trial court been informed of the incident when the landowners were first aware of the juror's separation, the court could have questioned the juror immediately about her conduct, in which case Basin would not have had to rely on past recollections by means of affidavits to show that the alleged misconduct was not prejudicial.

Because the record does not disclose that the landowners advised the court of the juror's separation from the other jurors when they knew about it before the entry of the verdicts, we hold that they are now precluded from alleging this misconduct as prejudicial. But because the trial judge considered the issue in denying the landowners' motion for new trial, we have examined that ruling of the district court.

■ The rule is well settled that it is within the sound discretion of the trial

court to determine whether or not a new trial should be granted [*Kresel v. Giese*, 231 N.W.2d 780 (N.D.1975)], and that the trial court's action will not be overturned on appeal unless a manifest abuse of discretion is shown [*Cook v. Stenslie*, 251 N.W.2d 393 (N.D.1977)]. Here, the district court was presented with affidavits in support of the motion by some of the landowners stating that while the jury was deliberating the bailiff was observed nervously going up and down stairs, and that when questioned the bailiff gave the impression that a juror had left the jury room in order to make a phone call.

In opposition, Basin submitted an affidavit of the juror who had left the jury room in which she stated that she had left the jury room in order to use the bathroom and was inadvertently locked out. Basin also submitted the affidavit of the bailiff stating that she did not recall if the juror had informed her she was going to make a phone call, but that when she returned the juror stated that she had gone to the bathroom and had been locked out. The trial judge considered the affidavits and in a supplemental memorandum opinion stated:

> "With respect to the juror misconduct, it appears that the juror did not, in fact, make a telephone call during the period of separation nor did she converse with any other person regarding the case. Accordingly, I conclude the impropriety was not prejudicial."

We conclude that the trial judge did not abuse his discretion in finding that the impropriety was not prejudicial and thus did not err in denying the landowners' motion for new trial based upon allegations of jury misconduct.

The orders denying a new trial are affirmed, and the appeal from the judgments is dismissed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.