Donald FISCHER and Maurice Fischer, Plaintiffs and Appellees,

v.

Richard KNAPP, Defendant and Appellant,

and

Elden Brady, Defendant.

Donald FISCHER and Maurice Fischer, Plaintiffs and Appellees,

v.

Richard KNAPP, Defendant,

and

Elden Brady, Defendant and Appellant.

Civ. Nos. 10292, 10306.

Supreme Court of North Dakota.

April 4, 1983.

James A. Wright (argued) and Cecelia A. Wikenheiser, of Hjellum, Weiss, Nerison, Jukkala & Wright, Jamestown, for plaintiffs and appellees.

James S. Hill, Sp. Asst. Atty. Gen., Bismarck, for Richard Knapp.

B. Timothy Durick, Sp. Asst. Atty. Gen., Bismarck, for Elden Brady.

VANDE WALLE, Justice.

The defendants, Richard Knapp and Elden Brady, have filed separate appeals from a judgment of the district court of Stutsman County dated September 16, 1981, and from separate orders of that court, dated August 2, 1982, denying motions by Knapp and Brady for relief from the judgment and for a new trial. By stipulation of the parties the appeals have been consolidated for disposition by this court. We reverse the orders denying a new trial.

On August 31, 1979, fifteen live red foxes were confiscated from Donald and Maurice Fischer, brothers, who are the plaintiffs in this case, by Knapp, a district game warden employed by the North Dakota State Game and Fish Department. Knapp confiscated the foxes in the belief that the Fischers had dug the foxes out of their natural den in violation of State law. Knapp took the foxes to the Spiritwood Lake field station pending disposition of criminal charges filed

against the Fischers for unlawful possession of furbearers. Brady, employed as a caretaker at the Spiritwood facility by the State Game and Fish Department, testified that although he was not instructed by anyone to care for the foxes he did so. Knapp testified that although he was unaware that anyone had been instructed by the Department to take care of the foxes he looked at the fox cages "approximately once a week" but he did not feed the foxes or clean the cages.

On December 6, 1979, the Fischers entered guilty pleas for "illegal possession of furbearers." As part of the sentence, they were each fined $50 and were ordered to pay $100 to reimburse the State Game and Fish Department for the feeding and care of the confiscated foxes. On that same date the foxes were returned to the Fischers.

Thereafter, the Fischers filed this civil action against Knapp and Brady seeking compensatory and punitive damages for injuries to the foxes allegedly caused by the willful or grossly negligent failure of the defendants to provide proper care for the foxes during the three-month confiscation period. The case was tried before a jury, which returned a special verdict in favor of the Fischers awarding compensatory damages against Knapp and Brady in the amount of $1,976.95, as well as punitive damages against Brady in the amount of $250 and punitive damages against Knapp in the amount of $2,500. Judgment was entered by the district court on September 16, 1981, in the amount of the jury verdict together with costs and disbursements. On November 30, 1981, through separate counsel, Knapp and Brady filed separate motions requesting relief from the judgment and for a new trial. By separate orders, both dated August 2, 1982, the district court denied the motions. Knapp and Brady have appealed to this court from the judgment dated September 16, 1981, and from the court's orders dated August 2, 1982.

With the exception of one issue which has been raised only by Knapp on appeal, Knapp and Brady have raised the same issues and have taken substantially identical positions with regard to those issues.

The issue raised by Knapp alone is:

Whether or not the district court abused its discretion in denying a new trial on the ground that defendant Brady communicated with the jury during a trial recess.

The following issues have been raised by both Knapp and Brady on appeal:

1. Whether or not the district court abused its discretion in refusing to grant a new trial on the following grounds:

   a. That the State of North Dakota, through the State Game and Fish Department, and not Knapp or Brady, is the real party in interest and that the lawsuit therefore is barred because the State is immune from liability under the doctrine of sovereign immunity.

   b. That there is newly discovered evidence requiring a new trial under Rule 59(b)(4), N.D.R.Civ.P.

   c. That there is not substantial evidence in the record to support the jury verdict.

   d. That the convictions of Donald and Maurice Fischer for illegally digging out furbearing animals in violation of Section 20.1–07–05, N.D.C.C., were improperly excluded as evidence by the district court.

2. Whether or not the district court erred in denying Knapp's and Brady's motions for a directed verdict under Rule 50, N.D.R.Civ.P.

3. Whether or not the district court erred in denying Knapp's and Brady's motions to dismiss, under Rule 12(b), N.D.R. Civ.P., for failure to state a claim upon which relief could be granted.

4. Whether or not the district court erred in denying Knapp's and Brady's motions for relief from the judgment under Rule 60(b), N.D.R.Civ.P.

One of the grounds raised by Knapp in support of his motion for a new trial was that defendant Brady, after the jury had

been sworn, engaged in a conversation with one or more of the jurors during a trial recess. Knapp asserts that neither he nor counsel for the defendants became aware of the contact until after the judgment was entered. In denying the request for a new trial on this ground the district court stated, in relevant part, in its memorandum decision:

> "The Court finds that the contact in this case was the mere exchange of simple pleasantries as is indicated by the affidavits of those who were best able to observe the contact and hear what was going on.

> . . . . .

> "The affidavits clearly reflect that the contact was minimal. It was in the nature of a greeting and it was properly terminated by the bailiffs when it occurred.

> . . . . .

> "It is clear from all the affidavits that the contact was minimal and there is not the slightest hint that any of the contact had to do with conversing on the subject of the trial or in forming any opinions with reference thereto."

■ It is within the sound discretion of the trial court to determine whether or not a new trial should be granted, and the trial court's determination in this regard will not be overturned on appeal unless a manifest abuse of discretion is shown. *Basin Electric Power Co-op. v. Paulson,* 289 N.W.2d 548 (N.D.1980).

■ Pursuant to Section 28–14–16, N.D. C.C., the jurors are to be admonished by the court that "it is their duty not to converse with or suffer themselves to be addressed by any person on any subject of the trial, . . ." Although it was not recorded, the court, through its memorandum decision, states that the jury was admonished as required by statute. None of the affidavits submitted by Knapp in support of his motion indicate that there was conversation between defendant Brady and the jurors on any subject of the trial. Upon reviewing those affidavits, we do not believe the trial

court erred in concluding that the contact between defendant Brady and the jurors was "minimal" and was quickly terminated by one of the bailiffs.

■ In *Schoenrock v. Eib,* 75 S.D. 613, 71 N.W.2d 82 (1955), one of the two defendants held a conversation with jurors during a recess consisting of a comparison of farming conditions in the defendant's home State of Kansas with those in South Dakota. In upholding the trial court's denial of a motion for a new trial, the South Dakota Supreme Court stated:

> "Of course the respondent should have avoided all contact with jurors but for this court to hold that the trial court abused its discretion in holding that the record facts cast no just suspicion upon the verdict would be simply opening the door for setting aside verdicts because of some whimsey or fanciful notion conceived after an adverse verdict." 75 S.D. at 616, 71 N.W.2d at 83.

We are well aware that the law with regard to jury conduct must be strictly followed in order to keep the conduct of jurors and jury verdicts above suspicion. See *James Turner & Sons v. Great Northern Railway Company,* 67 N.D. 347, 272 N.W. 489 (1937). Nevertheless, under the circumstances of the alleged jury misconduct in this case and on the basis of the affidavits presented before the district court, we conclude that the trial court did not abuse its discretion in refusing to grant a new trial because defendant Brady's contact with the jury was "minimal" and did not relate to any subject matter of the trial. We believe, as did the South Dakota Supreme Court in *Schoenrock, supra,* that to overturn the trial court's ruling for abuse of discretion would constitute setting aside a verdict on a "whimsey or fanciful notion" that prejudicial misconduct occurred.

■ Knapp and Brady assert that this lawsuit is, in effect, an action against the State of North Dakota which is barred under the doctrine of sovereign immunity. We disagree with Knapp and Brady's analysis of the nature of this lawsuit.

This action is not against the State of North Dakota but rather is against Knapp and Brady, as individuals, for willful or grossly negligent conduct in failing to properly care for foxes in their possession. That Knapp and Brady may have been acting in the scope of their employment as employees of the State Game and Fish Department while the foxes were in their possession does not transform the Fischers' lawsuit into one against the State nor does it shield Knapp or Brady from liability under the cloak of sovereign immunity for wrongful acts committed by them. *Spielman v. State,* 91 N.W.2d 627 (N.D.1958).

In *Spielman, supra,* the plaintiff brought a personal-injury action against the State of North Dakota, Sivert W. Thompson, as State Highway Commissioner for the State Highway Department, and John M. Weber, an employee of the State Highway Department who was driving a motor vehicle within the scope and course of his employment when a collision occurred which allegedly caused injuries to the plaintiff. The complaint did not allege that Thompson had personally committed any negligent acts, and this court concluded that because Thompson was made a defendant only in his official capacity as State Highway Commissioner he was subject to the same defenses and immunities as the State of North Dakota. However, the complaint did allege specific acts of negligence against Weber, an employee of the State Highway Department, for which, this court concluded, Weber was subject to liability without the protection of governmental immunity:

> "He [Weber] is alleged to be an employee of the State Highway Department whose negligence directly resulted in the plaintiff's injury. The mantle of governmental immunity does not protect an employee of the government from liability for negligent acts of commission by the employee." 91 N.W.2d at 630.

The complaint in this action, like the complaint with regard to Weber in *Spielman, supra,* alleges specific wrongful acts on the part of Knapp and Brady. Consequently, the complaint states a cause of action against Knapp and Brady as individuals for which they are subject to liability without the protection of sovereign immunity.

■ Relative to this issue, Knapp and Brady also assert that any duty to care for the foxes during the period of confiscation was held by the State Game and Fish Department and not by them as individuals. They assert that the trial court erred when it impliedly determined, by submitting the case to the jury, that Brady and Knapp had assumed a duty of care for the foxes. Upon reviewing the record, we conclude that the trial court did not err in determining that Knapp and Brady had assumed a duty of care for the foxes under the circumstances of this case. Brady conceded on the witness stand that although he was not instructed to do so, he assumed the function of caring for the foxes during their period of confiscation. Knapp testified that he was unaware that anyone had been instructed by the Department to care for the foxes but that he looked at the cages "approximately once a week." We conclude that the trial court did not err in determining that, under the circumstances, Knapp and Brady both had assumed a duty of care for the foxes. We further conclude that this lawsuit was properly brought against Knapp and Brady as individuals and that it is not an action against the State of North Dakota or the State Game and Fish Department, as Knapp and Brady have asserted. Accordingly, we conclude that the district court did not abuse its discretion in refusing to grant a new trial on this ground.

Of the remaining issues,[1] we believe one is dispositive of the appeal from the order

1. One of the issues raised by the appellants which we believe is unnecessary to discuss in view of our disposition of this matter concerns the sufficiency of the evidence to support the jury verdict. The record is replete with evidence that the foxes were not properly cared for after they were confiscated by the defend-ants and before they were returned to the plaintiffs as a result of the plea agreement. Our remand for a new trial should not be construed as an indication that the foxes should not have been properly cared for. However, there are provisions to punish those who do not treat animals humanely (see Chapter 36–21.1,

denying the motion for a new trial, i.e., the assertion that the trial court abused its discretion in refusing to grant a new trial on the ground that the court improperly excluded evidence that Donald and Maurice Fischer were convicted in Logan County of illegally digging out furbearing animals during June of 1979. The fifteen foxes which were seized on August 31, 1979, were returned to the Fischers on December 6, 1979, as part of a negotiated plea agreement under which the Fischers pleaded guilty, before the Stutsman County court of increased jurisdiction, to the crime of "illegal possession of furbearers." Although the record does not disclose the factual basis upon which the guilty pleas were entered, the Fischers assert that the Stutsman County convictions were based upon the Fischers' failure to have proper health certificates when the foxes they purchased in South Dakota were transported to North Dakota. Approximately two weeks after the foxes were returned as part of the Stutsman County plea negotiations, the Fischers were convicted in Logan County, upon guilty pleas, to the crime of illegally digging out furbearing animals during June, 1979, in violation of Section 20.1–07–05, N.D.C.C.

A review of the record reveals that plaintiffs filed a motion in limine to prevent the defendants from introducing evidence of the conviction. Defendants resisted the motion in limine in a written response and brief to the trial court. The morning of trial the trial judge announced:

"Last week—and I can't recall the day, I guess it was Thursday, the Court took under advisement a Motion to Strike and Motion in Limine. At that time the Court expressed its thoughts but told both of you that I would reserve my ruling until today. I am under the assumption that we weren't going to have the claim for fox that were dug up. If there is a mistaken assumption then I would like to know.

"MR. WRIGHT: No, Your Honor, we are not.

"THE COURT: It is just for, apparently, purchased fox? Then I am going to rule that the evidence of things that happened in Logan County with respect to digging up fox are irrelevant and any testimony with regard thereto would be irrelevant to that extent I think. I will make the ruling that I will grant the Motion in Limine for that portion of charges relating to any fox that were dug up since that's illegal under the law to take them that way. You can't acquire possession illegally.

. . . . .

"MR. ADKINS: I just want to make sure I have this all straight. Because I don't want to do anything to cause a mistrial. I cannot talk about what happened in Logan County?

"THE COURT: Right.

"MR. ADKINS: Can I talk about what was—as far as the Game and Fish people did investigating out at the Fisher [sic] farm and those events?

"THE COURT: That's where the fox were?

"MR. ADKINS: That's where they were discovered.

"THE COURT: I think I am not going to say that. You can bring that up. I don't want any talking about conviction. . . . But I don't want to hear anything about convictions in Logan County. That's all for sure."

Additionally, in discussing the jury instructions with counsel in chambers the trial judge stated:

"I felt the theme of the lawsuit, although I weigh them differently than the jury, I felt that one of the themes was a legitimate question was whether these fox were dug up or whether they were purchased. In the event that the jury finds that these are dug up, which would answer that first special question, if they answer no, I feel that as a matter of law, since they would be in illegal possession, they would not be entitled to recover anything even though they got back ille-

N.D.C.C.) other than rewarding those who may

have no possessory interest in the foxes.

gal fox. There is some evidence in that regard."

The first question in the special-verdict form submitted to the jury read:

"Do you find from a preponderance of the evidence that the fox in question were purchased by the plaintiffs?"

■ The trial court was, of course, correct in its observation that if the foxes were illegally dug the plaintiffs would not be entitled to recover anything. Section 20.1–01–03, N.D.C.C., provides, in part, that the "ownership of and title to all resident . . . wild animals within this state shall be in the state for the purpose of . . . *maintaining action for damages* as herein provided. Any person catching, killing, taking, trapping, or possessing any . . . wild animals protected by law . . . shall be deemed to have consented that the title thereto shall remain in this state for the purpose of regulating the taking, use, possession, and disposition thereof. The state, through the office of attorney general, may institute and maintain any action for damages against any person who unlawfully causes, or has caused within this state, the death, destruction, or injury of . . . wild animals, except as may be authorized by law." [Emphasis supplied.]

Furthermore, Section 20.1–10–01, N.D.C.C., provides, in part, that: "The commissioner, deputy commissioner, or any bonded game warden shall seize all . . . wild animals, . . . taken, killed, or possessed, or transported contrary to law, . . . All property so seized shall be held subject to the order of a court of competent jurisdiction."

If the animals illegally dug were the foxes in question it is clear that the Fischers had no ownership interest in them that would entitle them to damages for mistreatment of the animals, at least prior to the time of the plea agreement wherein the foxes were returned to the Fischers.

The defendants moved for a new trial alleging as one of the errors the error they now raise in this court. In its memorandum opinion denying the motion for new trial, the trial court indicated that there was sufficient evidence in the record to establish that the foxes were purchased by the plaintiffs in South Dakota. That, of course, is the threshold issue in this case, i.e., were the foxes purchased or dug up illegally?

The relevance and probative value of the evidence of the conviction was obvious. The filing of the motion in limine by the plaintiffs, the defendants' response thereto, the statements of the trial judge referred to previously herein, and the wording of the first question of the special-verdict form all demonstrated the relevance and probative value of the evidence of the conviction. It is apparent that all parties, as well as the trial judge, were aware of the significance of that evidence.

■ A party need not make formal objection or exception to a court ruling or order to preserve the right of appeal if the party appeared and resisted the subject matter, which was the situation in the instant case. Rule 46, N.D.R.Civ.P. The right to appeal was preserved by the defendants.

Rule 404(b), N.D.R.Ev., provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. However, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

■ Relevancy is the key factor in determining whether or not a prior conviction or evidence relating thereto may be admissible. See footnote 3 in *State v. Forsland,* 326 N.W.2d 688 (N.D.1983), which states, in part:

"Rule 404(b) is a specialized rule of relevancy. Accordingly, as with any determination pursuant to Rule 401, counsel must be prepared to 1) identify the consequential fact to which the proffered evidence of other crimes, wrongs or acts is directed (see ¶ 404[09] ), 2) prove the other crimes, wrongs or acts (see ¶ 404[10] ), and 3) articulate precisely the evidential

hypothesis by which the consequential fact may be inferred from the proffered evidence (see ¶ 404[11] ). Evidence which passes muster up to this point must, in addition, satisfy the balancing test imposed by Rule 403 which requires the probative value of the other crimes evidence to outweigh the harmful consequences that might flow from its admission."

In the instant case the title to and the right of possession was and is of prime concern to the proper disposition of the action. See 18 Am.Jur.2d, *Conversion,* § 156, p. 250. See also 29 Am.Jur.2d *Evidence,* § 446, p. 506.

This court, in *State v. Hastings,* 77 N.D. 146, 41 N.W.2d 305 (N.D.1950), held that no person can acquire the right to sell muskrat pelts unless such pelts are those of animals taken in open season, and those taken out of season are subject to seizure by the State as contraband.

The issues in this lawsuit make ownership, possession, and manner of acquisition a prime concern and as such evidence how and in what manner the animals were acquired is relevant if not necessary. This includes any acquisition by any unlawful means. Rules of law and rules of evidence subject to construction must be interpreted to promote and foster the ends of justice.

Even the privilege between doctor and patient, formerly established by statute and now by Rule 503, North Dakota Rules of Evidence, contains an exception. Rule 503(d)(3), N.D.R.Ev., in substance provides that if the patient in a proceeding relies upon a physical condition as either a claim or defense, the privilege is waived. *Sagmiller v. Carlsen,* 219 N.W.2d 885 (N.D.1974), held that a patient who brings a malpractice action waives the privilege. Similarly, in this case the plaintiffs rely upon proper possession or ownership and thus the manner in which plaintiffs acquired or came into possession of the animals (foxes in question) becomes relevant, and under Rule 609 the facts relating to the conviction would be admissible even if the conviction per se would not be conclusive of the issue. The conviction and the facts upon which it

was founded constitute evidence for the jury to consider in resolving the disputed facts of this case.

The jury in its special verdict found that the plaintiffs acquired the foxes by purchase. The big question, however, remains and exists: Would the jury have made this finding if. it had been able to consider the evidence relating to the conviction? The evidence rejected by the court was not intended to be used as character evidence [Rule 404, N.D.R.Ev.], but was directly related to the question as to whom the foxes belonged and how they were acquired. If the jury is given evidence in only one side of an issue, in all probability and logically the jury will form a conclusion only in accordance with the evidence submitted.

The instant case is a civil, not a criminal, case and the issues are quite different. In criminal cases, because the defendant has the option to not testify, prior convictions are more difficult to be admitted. Consequently, in this respect the application of the rules of evidence in criminal cases is not the same as in civil cases, where the parties do not have that option. Furthermore, the parties against whom the evidence was proposed to be used were the plaintiffs.

■ Under the ruling, by excluding the evidence of prior conviction and the facts leading up to it, a convicted plaintiff is in a better position than a nonconvicted plaintiff. A rule or a rule of law should not be interpreted so as to benefit or reward the wrongdoer or to shield the perpetrator. See *Beck v. Lind,* 235 N.W.2d 239 (N.D. 1975).

■ Although the proffered evidence of other crimes has probative value in proving something other than the convicted person's criminal propensity, the evidence is not admissible as a matter of course. *Dahlen v. Landis,* 314 N.W.2d 63 (N.D.1981). However, because the issue of legal ownership of the foxes was crucial to the central issue of the case, i.e., whether or not the Fischers are entitled to compensation for the wrongful treatment of the foxes, and because this issue was presented to and

recognized by the trial court, we believe it was error to exclude that evidence. Nor can we conclude that the error in admitting evidence of the conviction was not prejudicial because other evidence as to the digging of foxes was admitted. Rule 62, N.D. R.Civ.P., provides that no error in the exclusion of evidence is ground for granting a new trial unless refusal to take such action appears to the court inconsistent with substantial justice. The evidence of the conviction is the evidence of the illegal digging of the foxes and, as we have already noted, is directly concerned with the issue of ownership of the foxes and the resulting entitlement to damages for the negligent care of the foxes. Under these circumstances it was prejudicial error to reject the evidence of the conviction. *Dugas v. Felton,* 249 N.W.2d 215 (N.D.1976); *Alm Construction Company v. Vertin,* 118 N.W.2d 737 (N.D. 1962).

As their last three issues, Knapp and Brady assert: (1) that the district court erred in denying their motions for a directed verdict under Rule 50, N.D.R.Civ.P.; (2) that the district court erred in denying their Rule 12(b), N.D.R.Civ.P., motions to dismiss for failure to state a claim; and (3) that the district court erred in denying their motions for relief from the judgment under Rule 60(b), N.D.R.Civ.P. The reasons given by Knapp and Brady in support of the foregoing motions were also raised in support of their motions for a new trial, all of which have been previously discussed in this opinion. We conclude that further discussion of those matters is unnecessary.

In accordance with this opinion, the orders of the district court of Stutsman County dated August 2, 1982, denying a new trial, are reversed.

PEDERSON and SAND, JJ., concur.

LECLERC, District Judge, sitting in place of PAULSON, J., disqualified.

ERICKSTAD, Chief Justice, concurring in part and dissenting in part.

Having participated in the development of much of what is said in the majority opinion, it having been taken with my approval from my proposed opinion reaching a contrary result, I concur with the majority opinion except in its contrary result based upon the issue of the admissibility of the Logan County convictions.

I cannot agree that the trial court abused its discretion in refusing to grant a new trial because the Logan County convictions were excluded as evidence at the original trial. Having concluded that the defendants have not raised any matter constituting reversible error, I would affirm the judgment and the trial court's subsequent orders denying relief from the judgment and denying a new trial.

Prior to the trial of this action, the district court ruled that it would not allow Knapp or Brady to introduce evidence of the Logan County convictions. The ruling was very narrow; the court ruled that it would not admit the convictions, but the court did not rule that it would exclude any other evidence relative to the issue of whether or not the seized fox had been purchased or illegally "dug out" by the Fischers:

"MR. ADKINS [Defendants' counsel]: I just am trying to get in my mind at least, as far as what your ruling was this morning. As I understand it, I cannot present testimony as to the Logan County convictions, the digging up there. But that I can present evidence as to what the Fischers may have told my clients as far as where the fox came from. And I can present testimony basically where these fox came from, they were seized on that day.

"THE COURT: That is a disputed item. You claim they bought them and you are going to offer evidence. And he is going to offer testimony that they are going to say something to the effect that they dug them up.

"MR. ADKINS [Defendants' counsel]: Right.

"THE COURT: Okay. And that is a factual dispute. I don't see any particular problem in that. I just want to stay away from the conviction itself. As far

as statements going back and forth, I don't care.

"MR. ADKINS [Defendants' counsel]: I will not introduce the convictions from Logan County.

"THE COURT: That's what I wanted to stay away from."

Knapp and Brady's counsel did not attempt to apprise the court on what basis the Logan County convictions were admissible. The defendants' counsel did not refer the trial court to Rule 404(b), N.D.R.Ev., relating to the purposes for which evidence of other crimes is admissible, to Rule 609, N.D.R.Ev., relating to convictions that are admissible for impeachment purposes, or to any other authority under which the Logan County convictions might have been admissible.

Rule 404(b), of the North Dakota Rules of Evidence, is basically a formal recitation of the prior existing rule that evidence of prior crimes is not admissible unless it is substantially relevant for some purpose other than to show that a person of criminal character has acted in conformity with that criminal character. *See, State v. Forsland,* 326 N.W.2d 688 (N.D.1982). Rule 404(b), N.D.R.Ev., is a rule of evidence applicable to both criminal and civil cases. It does not distinguish between them. Even if the proffered evidence of other crimes has probative value in proving something other than the convicted person's criminal propensity, the evidence is not admissible as a matter of course. *State v. Phelps,* 297 N.W.2d 769 (N.D.1980). Justice Pederson, writing for a unanimous Court in *Dahlen v. Landis,* 314 N.W.2d 63 (N.D.1981), states in relevant part:

"[Rule 404(b), N.D.R.Ev.] does not authorize automatic admission merely because the proponent advances a proper purpose for the evidence; instead, the relevance and probative value of the evidence must be demonstrated. *See* 2 Weinstein's Evidence ¶ 404[08], n. 15 at 404–47, and ¶ 404[18] at 404–99–113. In *State v. Stevens,* 238 N.W.2d 251, 257–58, (N.D.1975), we held that, 'in the final analysis,' the key inquiry involved in ruling on the ad-

missibility of 'other acts' under Rule 404(b) is balancing the probative value of the evidence against its prejudicial effect. Quoting McCormick, we noted that 'the problem is not one of pigeonholing, but of balancing, of discretion rather than following a rule.' *State v. Stevens, supra,* 238 N.W.2d at 258." [Footnote omitted.] 314 N.W.2d at 70.

In this case, I do not believe that counsel for Knapp and Brady made the necessary effort to demonstrate the admissibility of the Logan County convictions under Rule 404(b), N.D.R.Ev., or under any other provision of law. Thus, I believe that the district court did not abuse its discretion in refusing to grant a new trial on that ground.

I also believe that the trial court's exclusion of the Logan County convictions, if improper, did not constitute prejudicial error in this case. Donald Fischer conceded, on the witness stand, that he and Maurice had "dug out fox" on two separate occasions during June, 1979:

"Q. Now, in June, 1979, did you and your brother, Maurice, dig some fox out?

"A. Yes, we did.

"Q. And do you recall when that was in June?

"A. Well, there were two different occasions. One was the first part of June and one was about the middle of June."

Defendant Knapp also testified relative to Donald Fischer's concession of having dug out fox in June:

"A. I informed Mr. Donald Fisher that I was at the Fisher farm investigating a report of illegal fox being held at that particular location.

"Q. What did Mr. Fisher tell you?

"A. Mr. Donald Fisher told me they were his fox.

"Q. Did he tell you anything else?

"A. At that point I gave him his *Miranda* Warning.

"Q. After you gave him his warning, did he say anything else?

"A. Yes, he did.

"Q. What did he say?

"A. I told him we were with the understanding that the fox had been dug up and asked him if this was correct. And he said, yes, it was. And that they had dug two dens. One in early June and one toward the middle of June."

Donald Fischer's concession that both he and Maurice had dug out fox in June was not disputed by Maurice or any other party.

The court's instructions to the jury required the jury to find, as a prerequisite to the Fischers receiving any recovery in this case, that the confiscated fox had been purchased by the Fischers, and not dug out by them, illegally or otherwise. The jury concluded, in its special verdict, that the fox which were confiscated from the Fischers during August, 1979, had been purchased by the Fischers. The jury thereby necessarily concluded that the fox which were dug by the Fischers during June, 1979, illegally or otherwise, were not the same fox which were confiscated from the Fischers during August, 1979. In view of the jury's finding that the fox had been purchased, despite Donald's testimony conceding that the Fischers dug out fox during June, 1979, I conclude that the evidence of the Logan County convictions, if admitted, could not have significantly affected the jury's verdict. For that additional reason, I believe that the trial court's evidentiary ruling on the Logan County convictions did not constitute prejudicial reversible error.

LECLERC, District Judge, concurs.