**HOSPITAL SERVICES, INC., a corporation, Plaintiff and Appellant,**

v.

**Loren E. BRACKEY, Defendant and Appellee.**

**Civ. No. 9565.**

Supreme Court of North Dakota.

Aug. 2, 1979.

Pearson & Christensen, Grand Forks, for plaintiff and appellant; argued by Douglas A. Christensen, Grand Forks.

Bjella, Neff, Rathert & Wahl, Williston, for defendant and appellee; argued by James F. Twomey, Senior Law Student.

SAND, Justice.

This case concerns the procedure involved under Chapter 25–09, NDCC, in the collection of accounts for the care and treatment of state hospital patients. The question presented for our review is whether or not an application for relief on grounds of inability to pay, filed by a patient after litigation is started for collection on his state hospital account, serves as a bar to the continuance of the litigation.

The facts, as they relate to the issue before us, are not in dispute. On 28 October 1972, Loren E. Brackey voluntarily committed himself to the state hospital for treatment of alcoholism. He was released

from treatment on 16 December 1972. Brackey was again committed to the hospital on 8 February 1973, this time involuntarily. He was released on 24 April 1973. The value for Brackey's care and treatment during the two periods was $3,148.05.

Prior to the commencement of this action, the state hospital requested payment from Brackey for the value of his care and treatment. Brackey neither made a payment on the account nor did he make application for relief on grounds of inability to pay. The state hospital subsequently assigned Brackey's account to Hospital Services, Inc., for collection. Hospital Services served a summons and complaint on 19 May 1975 seeking a judgment against Brackey for the amount of the value of the care and treatment rendered to him. On 16 June 1976, Brackey made application to the state hospital for relief from payment on his account on grounds of inability to pay. The state hospital refused to process the application because the account had been turned over to Hospital Services for collection. Brackey subsequently made a motion to dismiss the complaint for failure to state a claim upon which relief could be granted, based upon the state hospital's refusal to process his application. Briefs were submitted to the district court on both the merits of the case and the motion to dismiss. On 6 July 1978 the district court issued a memorandum opinion granting the motion to dismiss, concluding that until Brackey's application for relief was processed, no action could be maintained for the collection of his account. An order was entered dismissing Hospital Services' claim without prejudice and without costs, and judgment was entered accordingly. Hospital Services appealed.

Section 25–09–02,[1] NDCC, provides that the supervising department of the state hospital shall recover from a person who has been a patient of that institution for the expenses of care and treatment, if possible.

Section 25–09–07(2),[2] NDCC, allows the state hospital to contract with nonprofit hospital collection agencies for the collection of patient accounts.

Section 25–09–05(1),[3] NDCC, allows a patient to make application, based upon an

---

**1.** Section 25–09–02, NDCC, provides in part:
   "Expenses for care and treatment of each patient at the state hospital . . . shall, if practicable, be in accordance with the cost of providing care and treatment for the different degrees or conditions of mental and physical health. The supervising department shall recover monthly from the patient, if possible, or from the person who has been a patient in such institution after he has been discharged from the institution, expenses for care and treatment."

**2.** Section 25–09–07(2), NDCC, reads:
   "The state hospital and state school are permitted to contract with North Dakota nonprofit hospital collection associations or collection agencies located in the state for the collection of amounts due the state for expenses incurred by the state of North Dakota for the care and treatment of patients at the state hospital or state school."
   This section provides the state hospital with the power only to contract for the collection of its accounts and not to assign those accounts for collection. The document by which Hospital Services was given power to collect on Brackey's account was termed an "assignment," and provided:
   "For valuable consideration, we hereby sell, assign, and transfer unto Hospital Services, Inc. that certain claim of State Hospital against Loren E. Brackey amounting to $3148.05, and we do hereby authorize said assignee to bring action or suit thereon in its own name and to do any and all things necessary to enforce collection of the amount of said claims."
   The district court regarded the document as a contractual arrangement for collection and not a true assignment. Because there does not appear to have been any evidence or affidavits presented on this issue, or any findings of fact made, and because the issue was not raised at the trial court level nor the court's conclusion questioned on appeal, we will assume, for purposes of this appeal, that the court's determination was correct.
   The record also does not indicate whether or not Hospital Services is a *nonprofit* corporation. We take judicial notice, however, that Hospital Services is in fact a nonprofit corporation.

**3.** Section 25–09–05(1), NDCC, states in pertinent part:
   "The patient . . . may make application to the supervising department to pay less than the costs or none of the costs incurred by the state for the patient's care and treatment at the state hospital. Such application shall be accompanied by proof of the patient's . . . inability to pay. Upon receipt of such application, the supervising department *shall* direct

inability to pay, to pay less than the costs or none of the costs incurred by the State for the patient's care and treatment at the state hospital.

In addition, § 25–09–06(1),[4] NDCC, provides for a periodic review process of the patient's inability to pay. That section also allows a redetermination of ability to pay based upon a periodic review to be made retroactive.

■ These four statutes relate to the same subject matter in general, or are in pari materia; thus, every effort should be made to give meaningful effect to each without rendering one or the other useless. *State v. Mees*, 272 N.W.2d 61 (N.D. 1978).

■ The district court concluded that until a patient's initial application for relief on grounds of inability to pay is processed, including any appeal that may be taken, no action may be maintained on behalf of the State for collection on the patient's account. Hospital Services argued on appeal, however, that a patient's liability for care and treatment provided by the state hospital is not discharged upon a determination of inability to pay. Rather, the obligation is an unconditional liability which the State has a right to reduce to a judgment regardless of ability to pay. Consequently, it contended, an application for relief based upon an inability to pay does not affect the State's

right to seek a judgment on a patient's account. We agree.

That the patient's obligation is not discharged but merely suspended is indicated by the statutory provision allowing a reexamination of a patient's ability to pay with the power to make a redetermination retroactive. If the initial determination was intended to provide for a discharge of the obligation, a reexamination would be meaningless as an obligation would no longer exist. Also, that the statute allows the redetermination to be made retroactive further defies a logical conclusion that the prior determination of inability to pay effected a total and complete discharge of liability. In addition, § 25–09–09, NDCC,[5] by providing it is not necessary to bill currently any person not having present ability to pay, implies that liability exists despite a determination of inability to pay. We conclude a determination of a patient's inability to pay does not discharge his liability for care and treatment provided by the state hospital.

■ In filing an action against Brackey, Hospital Services was seeking a judgment on his account. A judgment is a judicial determination on matters submitted to a court for decision which fixes the rights and duties of the parties. *Hunt Oil Company v. Kerbaugh*, 283 N.W.2d 131 (N.D. 1979); *In re Clark*, 24 Wash.2d 105,

---

the county social service board of the county from which the patient was admitted to determine whether the patient . . . [is] . . able to pay all, a portion, or none of the expenses incurred by the state for such patient's care and treatment. The supervising department *shall* approve, reject, or amend the determination made by the county social service board. The determination made by the supervising department may be appealed to the district court of Burleigh County or the district court of the county of residence of the patient . . . .." [Emphasis added.]

**4.** Section 25–09–06(1), NDCC, states in pertinent part:

"Any person . . . may make application to the supervising department not more often than once each calendar year for a review of the determination made by the supervising department in regard to the ability of such persons . . . to pay costs of care and treatment. Such application and review shall be treated in the same manner as an original ap-

plication by such persons for a determination of their inability to pay costs of care and treatment. Upon such review, the supervising department may reaffirm or alter the previous determination and shall have authority to make such redetermination retroactive. In addition, the supervising department on its own motion may review the ability of the patient . . . to pay for costs of care and treatment, which determination may be made retroactive."

**5.** Section 25–09–09, NDCC, provides in part:

"No statute of limitations or similar statute or the doctrine of laches shall bar the right of recovery for the expense incurred by the state for care and treatment at the state hospital or state school from the patient . . . .. It shall not be necessary to bill currently any person for those accounts determined to be inactive, or currently uncollectible, or for which it has been determined as provided by law that there is no present ability to pay."

163 P.2d 577, 580 (1945); 49 CJS Judgments, § 1. This is so whether or not the judgment is collected. It should also be noted that a judgment determines any defenses to an action. *Frayer v. Crain*, 196 Okl. 172, 163 P.2d 966, 968 (1945). An inability to pay, however, is generally not considered a defense to an action for entry of judgment. Nor is an inability to pay, based upon a determination made pursuant to § 25–09–05, NDCC, a defense to an action brought by the state hospital. As we have stated previously, a determination that a patient is unable to pay does not discharge his obligation or liability to the state hospital for the value of the care and treatment he received. Consequently, an inability to pay, with or without a formal determination by the state hospital, cannot serve as a valid defense to any action to ascertain such a liability or obligation. Although a determination, under § 25–09–05(1), NDCC, of an inability to pay may serve as a defense or means of staying an execution, that is not the situation here. Because a determination of inability to pay is not a defense to an action on a state hospital account, the filing of an application for relief on grounds of inability to pay cannot serve as a bar to the present action.

Brackey argued the legislative history of Chapter 25–09, NDCC, indicated a determination by the state hospital of inability to pay was a prerequisite to an action on a patient's account. In support of his argument he quoted the following language from a report of the North Dakota Legislative Research Committee which led to the enactment of Chapter 25–09:

> "If the state is to assume the responsibility of paying all costs of operations of these three institutions, it also appears desirable that the Board of Administration assume the responsibility for the billing and collection of the average costs of care from the patients, their estates, or responsible relatives, in such instances *where it has been determined that such persons or their estates are unable to pay these costs without undue hardship.*" [Emphasis added.] Report of the North Dakota Legislative Research Committee,

Finance, pp. 19–20, 37th Legislative Assembly (1961).

■ We agree a determination of ability to pay is a prerequisite to the execution of a judgment or the collection of an account for care and treatment when ability to pay has been brought into issue by the patient through an application for relief. But such application does not prevent obtaining a judgment. Neither does the statute require, nor do we believe the Legislature intended it to require, a determination of ability to pay before the state hospital can start collection proceedings when the patient has not filed an application for relief. The statute requires positive action on the part of the patient in the form of filing an application for relief before the state hospital need make a determination of ability or inability to pay.

Nor does the statute require a determination of ability to pay as a prerequisite to ascertaining liability for an account even when the patient has filed an application for relief. We note in Brackey's answer to Hospital Services' complaint he contended he was not liable on the account because provisions of Chapter 25–09, NDCC, were unconstitutional. Brackey has not abandoned his defense of unconstitutionality. The parties were entitled to a determination of liability regardless of the filing of an application for relief on grounds of inability to pay.

■ Brackey is correct in his argument that the provisions of § 25–09–05(1), NDCC, requiring the state hospital to process an application of inability to pay are mandatory. See *Northwestern Bell Telephone Co. v. Wentz*, 103 N.W.2d 245, 254 (N.D. 1960). Dismissal of the state hospital's action to obtain a judgment on the account, however, was not the appropriate remedy for the state hospital's refusal to process the claim. We appreciate the trial court's concern to compel the state hospital to act but a dismissal was not proper. A writ of mandamus requiring the appropriate officer of the state hospital to process the application might have been more appropriate.

■ Hospital Services also sought an opinion from this court on the constitutional issues raised by Brackey. The consideration of the constitutionality of our state statutes are not to be taken so lightly. The constitutional questions presented by Brackey were not considered or decided by the district court because of its granting of the motion to dismiss. Consequently, if we were to decide the constitutional issues in this case we would do so on an inadequate record. Because of the constitutional questions presented and the inadequate record, we find it necessary that this case be remanded for further disposition. *Benson v. N.D. Workmen's Comp. Bureau*, 250 N.W.2d 249 (N.D. 1977).

The judgment of the district court dismissing the plaintiff's complaint is reversed and the case is remanded for further disposition on the merits of the issues presented.

ERICKSTAD, C. J., and SAND, PAULSON, PEDERSON and VANDE WALLE, JJ., concur.