**UNITED STATES of America, Plaintiff,**

v.

**Murrin George CASTELLO, Defendant.**

No. EP–81–CR–137.

United States District Court,
W. D. Texas,
El Paso Division.

Oct. 19, 1981.

Michael S. McDonald, Asst. U. S. Atty., El Paso, Tex., for plaintiff.

Joseph S. Chagra, El Paso, Tex., for defendant.

## ORDER GRANTING MOTION FOR NEW TRIAL

HUDSPETH, District Judge.

On June 27, 1981, the Gross Manufacturing Company sponsored a company picnic at the Castner Recreation Area, Fort Bliss, Texas, a location within the special territorial jurisdiction of the United States. In the early evening, about the time the picnic was breaking up, Defendant Murrin George Castello fired two pistol shots at one Henry Villa, both of which struck the victim. Villa was treated for his gunshot wounds at William Beaumont Army Medical Center, and lived to testify at the trial. The Defendant was tried on a two count indictment alleging (1) assault with a dangerous weapon with intent to do serious bodily harm, in violation of 18 U.S.C. § 113(c), and (2) assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(f). The jury returned a verdict of guilty on both counts.

After the verdict, Defendant filed a motion for new trial, alleging that extraneous prejudicial matter had been brought to the attention of the trial jury. First, he alleges that during the trial and prior to the jury's deliberations, one juror made prejudicial statements concerning news media accounts of the trial in the presence of other jurors. Second, he contends that during deliberations, the jury received extraneous evidence which was improper and prejudicial to the Defendant, to wit: the statements of a

juror as to certain experiments conducted by him during a weekend recess. Since the motion for new trial must be granted on the second ground, it is unnecessary to discuss the first.

The defense in this case was self-defense. The Defendant admitted that he shot Villa, but maintained that he had reason to believe and did believe that he was in imminent danger of death or serious bodily harm from which he could extricate himself only by the use of deadly force against Villa. A critical issue of disputed fact was whether Villa was shot in the back or in the chest. Defendant testified that he fired the pistol into Villa's chest from a distance of two or three feet, as Villa was in the process of attacking him. Villa claimed he was several yards away from the Defendant, facing away from him, and was hit in the back by both shots. The prosecution called two army doctors who had treated Villa to testify that the entrance wounds made by a .22 calibre bullet are typically smaller than the exit wounds; that the smaller holes in Villa's case were in his back, near the shoulder blade; and that in the opinion of each doctor, the two bullets entered Villa's back and exited from his chest.

The jury commenced its deliberations on Friday, September 11, at 4:23 p. m. At 8:50 p. m., the jury had not reached a verdict, and following appropriate instructions from the Court, it was excused until Monday. At 9:00 a. m., on Monday, September 14, the jury resumed deliberations, and arrived at a unanimous verdict within one hour. Later, three members of the jury [1] gave affidavits that another juror had conducted a ballistics experiment during the weekend recess, and reported his findings to the entire jury on Monday morning. Specifically, the juror informed his fellow jurors that he had fired a weapon into an object, and observed that the bullet hole at the point of entry was smaller than that at the point of exit. At the evidentiary hearing on the motion for new trial, jurors Burgess and Estrada testified that these statements were made prior to the jury's arriving at a verdict, and Mrs.

---

1. The three who gave affidavits were Mary Renauld, Irene Burgess, and Roberto Estrada.

Burgess testified the remarks had been made to the entire jury at least twice, and that the jury discussed the experiment to some extent.[2]

■ The perceived role of the contemporary jury has changed considerably from the days of the early common law. (See Judge Friendly's excellent discussion in *United States ex rel. Owen v. McMann*, 435 F.2d 813, 816–817 (2d Cir. 1970), *cert. denied* 402 U.S. 906, 91 S.Ct. 1373, 28 L.Ed.2d 646 (1971). The modern view is that a juror's extra-court acquaintance with the matters addressed at trial tends to impugn his competence to serve, and that the jury must consider only that evidence which comes before it in open court. *Cf. Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). However, jury members cannot be expected to check their general experiences and perceptions at the courthouse door. Indeed, it is contemplated that the jury will draw upon these very qualities in arriving at a collective determination. The difficulty lies in distinguishing those matters of experience and common sense which the court will permit, if not encourage, from extra-record "evidence" which does violence to the twin goals of justice and fairness. As lucidly stated by Judge Friendly:

> The touchstone of decision in a case such as we have here is thus not the mere fact of infiltration of some molecules of extra-record matter, with the supposed consequences that the infiltrator becomes a "witness" and the confrontation clause automatically applies, but the nature of what has been infiltrated and the probability of prejudice. *United States ex rel. Owen v. McMann, supra*, 435 F.2d at 818.

■ In *Farese v. United States*, 428 F.2d 178, 179 (5th Cir. 1970), the Fifth Circuit stated the rule to be as follows:

> It is a fundamental principle that the government has the burden of establishing guilt solely on the basis of evidence produced in the courtroom and under circumstances assuring the accused all the safeguards of a fair trial. Trial jurors have no right to investigate or acquire information relating to the case outside of that which is presented to them in the course of the trial in accordance with established trial procedure. *Farese v. United States, supra*, 428 F.2d at 179.

Once a juror has breached his duty by infecting the jury's deliberations with extrinsic material, a new trial will be warranted if there is a reasonable possibility of prejudice resulting therefrom. *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963); *United States v. Lay*, 644 F.2d 1087, 1090 (5th Cir. 1981) (dictum); *United States v. Renteria*, 625 F.2d 1279, 1284 (5th Cir. 1980), (remand for determination whether jurors heard prejudicial material in recordings of conversations not introduced into evidence); *Durr v. Cook*, 589 F.2d 891, 894 (5th Cir. 1979) ("[t]he cases are universal in requiring that the reasonable possibility of prejudice exists before granting the requested relief"); *United States v. Howard*, 506 F.2d 865, 869 (5th Cir. 1975) (district court must determine if extrinsic facts disclosed in jury room relating to defendant's past created reasonable possibility that breach was prejudicial to a defendant); *Farese v. United States, supra* (conviction for crime involving unlawful monetary gain reversed upon reasonable possibility that jury's discovery of $750 in cash in their examination of freshly laundered shirts affected their verdict). When a breach is shown, there is a rebuttable presumption of prejudice, and it is the prosecutor's burden to demonstrate the harmlessness of any breach to the defendant. *United States v. Renteria, supra*, 625 F.2d at 1284; *United States v. Howard, supra*, 506 F.2d at 869.

■ The rule is well established that a jury may not impeach its own verdict. *See* Fed.R.Evid. Rule 606(b). The Court is not

---

2. Mr. Velarde, the juror identified by jurors Burgess, Estrada, and Renauld, testified that he could not recall the experiment or any mention of it to the jury, although he did inform the jury that he was acquainted with guns and "knew what they'd do." Faced with a credibility choice, the Court finds the testimony of Mr. Estrada and Mrs. Burgess more credible.

at liberty to investigate "the subjective effects of any breach on any jurors, whether such effects might be shown to affirm or negate the conclusion of actual prejudice." *Simon v. Kuhlman*, 488 F.Supp. 59, 68 (S.D. N.Y.1979), citing *United States v. Howard, supra.* Instead, the Court must conduct an inquiry into the prejudicial potential of extraneous material on the average juror. *Llewellyn v. Stynchcombe*, 609 F.2d 194, 196 (5th Cir. 1980); *United States v. Howard, supra.* Objective facts, therefore, become the focus of the inquiry. Courts have considered relevant the following: (1) whether the extrinsic material was actually received, and if so, how it was received (*See Durr v. Cook, supra*); (2) how long it was available to the jury; (3) the extent to which the jury discussed and considered the material; (4) whether the material intruded before or after the jurors reached a verdict and, if before verdict was reached, at what point in the deliberations it occurred; and (5) "other matters as may bear on the issue of the reasonable possibility of whether they affected the verdict." *Paz v. United States*, 462 F.2d 740, 746 (5th Cir.), *cert. denied, sub nom. Jackson v. United States*, 414 U.S. 820, 94 S.Ct. 47, 38 L.Ed.2d 52 (1972).

■ The announced result of the juror's experiment may reasonably have affected the jury's verdict in this case, thereby compromising Defendant's legitimate expectation and right that the decision be based solely on the evidence adduced at trial. Analogous cases of juror experimentation buttress this conclusion. In *Durr v. Cook, supra*, the defendant plead self-defense in response to a charge of second-degree murder. The defensive theory was that the victim had simultaneously opened the door of his 1973 Ford pickup truck and reached for a rifle which hung from a gun rack in the rear of the cab. The jury voted for conviction in spite of the defendant's explanation. It was alleged by the defense that the jury foreman during the pendency of the trial had visited a local automobile dealer to perform experimental twisting movements inside a Ford truck cab in order to test the defendant's theory. The defense further asserted that the foreman reported the results of this experiment to the jury. Faced with an insufficient factual record, the Fifth Circuit held that the defendant had stated a substantial claim that his constitutional rights were violated and remanded to the trial court to determine if the circumstances were as the defendant had alleged. *Id.*, at 894. *Durr* is also significant for its dicta. While noting that the foreman's visit to the auto dealer and entry into the truck, without more, called into question the possibility of a prejudicial factual intrusion, the Court also noted that upon further investigation the "true facts" might suggest otherwise. *Id.* The verdict might not be infirm under any of the following circumstances: (1) the foreman was not conducting an experiment; (2) the foreman's alleged communications were postverdict; (3) the experiment's results were favorable to the defendant; or (4) the foreman did not report his findings to the jury.

The defendant in *United States v. Beach*, 296 F.2d 153 (4th Cir. 1961) appealed from a perjury conviction based on testimony before a grand jury. The defendant had testified before that body *inter alia*, that he did not know certain men in a certain house, and that he had not heard adding machines in use in said house. The adding machines and supporting foam rubber pads were admitted into evidence and sent to the jury in the jury room. The jury then requested the court to send them an electric drop cord not introduced into evidence, presumably to test the operation of the machines. The court arranged for the requested electric cord to be delivered to the jury. The Fourth Circuit found the experiment highly improper, and prejudicial to the defendant, and awarded the defendant a new trial. *Id.*, at 160.

All indicators here suggest a prejudicial effect. First, the experiment was directed at a material issue at trial, namely, whether the victim was shot in the back. Second, the "results" of the experimenting juror's test were unfavorable to Defendant's theory of the case. Third, not only were these findings reported to the entire jury panel, but the communication came at a critical

stage in the deliberations.[3] Fourth, there is some evidence to the effect that in addition to receiving the comments of Mr. Velarde, the jury devoted some discussion to his experiment, again prior to reaching a verdict. Finally, as the jury in *Beach* had no assurance that they operated the adding machines under conditions similar to those prevailing in the house, here there is no indication that the conclusions of a ballistics experiment conducted with a non-human target can be validly applied to a human subject. That the defense has no opportunity to cross-examine a "testifying juror" on such matters is one of the underlying reasons for not allowing a jury to receive extraneous materials of this type.

In light of the foregoing discussion, the Defendant's motion for a new trial pursuant to Rule 33, Federal Rules of Criminal Procedure should be granted.

It is therefore ORDERED that Defendant's motion for a new trial be, and it is hereby, GRANTED.

It is further ORDERED that this cause be placed on the criminal docket call scheduled for Monday, November 30, 1981, at 8:30 a. m., for retrial.

---

**3.** Significantly, the jury was unable to reach a unanimous decision Friday evening. The juror reported on his findings after deliberations resumed on Monday, and a verdict followed soon after.