**Bradley KEYES, Plaintiff and Appellant,**

**v.**

**Susan AMUNDSON, Robert Amundson, Craig Stoner, G & J Hotshot Service, Inc., and Getter Trucking, Inc., Defendants and Appellees.**

**Civ. No. 10396.**

Supreme Court of North Dakota.

Dec. 28, 1983.

* Justice WM. L. PAULSON served as a Surrogate Justice for this case pursuant to Section 27–17–03, N.D.C.C.

Greenwood, Greenwood & Greenwood, Dickinson, for plaintiff and appellant; argued by Dann Greenwood, Dickinson.

Bjella, Neff, Rathert, Wahl & Eiken, Williston, for defendants and appellees Amundsons; argued by Paul W. Jacobson, Williston.

Letnes, Marshall, Fiedler & Clapp, Grand Forks, for defendants and appellees Stoner and G & J Hotshot Service, Inc.; argued by Jay H. Fiedler, Grand Forks.

McIntee & Whisenand, Williston, for defendant and appellee Getter Trucking, Inc.; argued by Frederick E. Whisenand, Williston.

ERICKSTAD, Chief Justice.

Bradley Keyes appeals from the judgment, the order denying his motion for judgment notwithstanding the verdict, and the order denying his motion for a new trial. We vacate the judgment, reverse the order denying a new trial, and remand for a new trial.

This action arose out of a motorcycle-automobile accident which occurred on August 4, 1981, in Williston, North Dakota. Bradley Keyes [Keyes] was riding his motorcycle in a westerly direction on 26th Street. Susan Amundson [Amundson] pulled out from a stop sign into the path of the oncoming motorcycle, and the collision ensued. The vision of both drivers was obstructed by a semi-trailer truck which had been parked on 26th Street near the intersection by Craig Stoner [Stoner]. Keyes alleged that at the time of the accident Stoner was acting as an agent for G & J Hotshot Service, Inc. [G & J] and Getter Trucking, Inc. [Getter].

Keyes was seriously injured in the accident. His injuries included permanent paralysis of his right arm, loss of two toes, a broken jaw, and numerous lacerations which have left permanent scarring.

Keyes commenced this action shortly after the accident. The case was tried to a jury, and the jury returned its verdict apportioning negligence in the following amounts: Keyes—40%; Amundson—40%; and Stoner—20%. As a result, the trial court concluded that under our comparative negligence statute, § 9–10–07, N.D.C.C., Keyes was not entitled to any recovery and the action was dismissed.[1]

Keyes has raised a number of issues on appeal. We find it necessary to discuss only two: (1) did the trial court err in allowing the jurors to separate over the weekend after the case had been submitted to them, and (2) was Keyes prejudiced by unauthorized views of the accident scene by members of the jury.[2] To a great ex-

---

1. We express no opinion on whether or not § 9–10–07, N.D.C.C., prohibits recovery in this situation. Other jurisdictions construing similar comparative negligence statutes have reached varying results in cases where the plaintiff's negligence is as great as each individual defendant's negligence, but less than the aggregate negligence of all defendants. For a compilation of cases discussing the issue, *see* Annot., 8 A.L.R.3d 722 (1966). Because Keyes has not raised the issue, we need not address it at this time.

2. Keyes has raised a number of other issues, including allegations of unfair surprise caused by nondisclosure of the basis for defendants' expert witness's opinion, improper communication between the bailiff and the jury, and insufficiency of the evidence to support the verdict. Because we conclude that reversal is required

tent these issues are interrelated, because it was the improper separation of the jurors which afforded them an opportunity to view the accident scene after the case had been submitted to them.

■ A motion for a new trial is addressed to the sound discretion of the trial court, and its action on the motion will not be disturbed on appeal in the absence of an abuse of discretion. *Wilson v. General Motors Corp.*, 311 N.W.2d 10, 15 (N.D. 1981); *Johnson v. Monsanto Co.*, 303 N.W.2d 86, 91–92 (N.D.1981). It is within this context that we consider the issues raised by Keyes.

A brief factual background of the events leading to the jurors' misconduct is necessary. The jury retired for deliberations late in the afternoon on Friday, November 12, 1982. Over the objection of Keyes' counsel, the court dismissed the jurors and allowed them to return to their homes for the weekend at approximately 12:45 a.m., Saturday, November 13. The jurors were instructed to return to continue their deliberations at 8:00 a.m. on Monday, November 15.

Keyes contends that § 28–14–18, N.D. C.C., prohibits a weekend separation of the jurors after the case has been submitted to them. Section 28–14–18, N.D.C.C., provides, in pertinent part:

"*28–14–18. Conduct of jurors in retirement.* When the case finally is submitted to the jurors, they may decide in court or retire for deliberation. If they retire, they must be kept together in some convenient place under charge of an officer, until they agree upon a verdict, are temporarily dismissed by the court, or are permanently discharged by the court.... Where the jurors have not agreed upon a verdict by twelve midnight of any day of deliberations, the trial judge may temporarily dismiss the jurors from twelve midnight to eight a.m. that day when the jurors shall resume deliberations.... In all cases

where the jurors are dismissed or separated, as above stated, the trial judge shall admonish the members thereof that they must not in any manner discuss the case with anyone, nor permit anyone to discuss it with them, while they are so dismissed or separated, and that they must discuss and consider the case only in the room when all members of the jury are present."

■ The defendants argue that the statute permits the court, in its discretion, to order a weekend separation. We do not agree. The statute clearly gives the court authority to "temporarily dismiss" the jurors if they have not reached a verdict by twelve midnight of any day of deliberations; however, the duration of such a temporary dismissal is not unlimited. The court may dismiss the jurors "from twelve midnight to eight a.m. *that day.*" [Emphasis added.] We read the statute to permit, at a maximum, an eight hour separation; the jury must reconvene for further deliberations at eight a.m. the next morning. The court does not have the discretion to allow a weekend separation, or any other separation not specifically authorized by the statute. The law with regard to jury conduct must be strictly followed in order to keep the conduct of jurors and jury verdicts above suspicion. *Fischer v. Knapp*, 332 N.W.2d 76, 79 (N.D.1983); *Demaray v. Ridl*, 249 N.W.2d 219, 225 (N.D. 1976). Separation of the jurors after they have begun deliberations should be minimized to lessen the possibility of juror misconduct, outside influence, and receipt of extraneous prejudicial information.

■ Furthermore, the record does not indicate that the court admonished the jury before allowing them to separate for the weekend. Section 28–14–18, N.D.C.C., provides that in all cases where the jurors are temporarily dismissed the trial judge is required to admonish the jurors that they are not to discuss the case with anyone during

on other grounds, we find it unnecessary to reach these issues. We specifically note that the

claimed irregularities are unlikely to reoccur.

the dismissal, and that they are to consider the case only in the jury room with all members of the jury present. We conclude that the trial court erred in allowing the jurors to separate over the weekend and in failing to admonish them before dismissal.

█ In order to obtain a new trial, however, Keyes must also show that he has been prejudiced in some way by the errors. Mere reliance upon technical violations of the statute without a showing of prejudice is insufficient. *See State v. Bergeron,* 340 N.W.2d 51, 59 (N.D.1983).

We conclude that Keyes has established prejudice in this case by proof of juror misconduct during the weekend separation which resulted in extraneous prejudicial information reaching the jury. When the jury reconvened on Monday morning, at least two (and possibly three) jurors informed the rest of the jurors that they had investigated the scene of the accident over the weekend. One of the jurors, Patricia Larson, related the incident in a post-trial affidavit:

"On Monday morning Larry Lynne said that he went to the scene of the accident so that he could report what he found for those who hadn't had time. Mrs. Devers also said she went to the scene. I believe at least one other also said they went. Among other things, those persons said that Susan Amundson couldn't have seen even if the truck was not there because there were big garbage cans there now."

Larry Lynne, the foreman of the jury, submitted a responsive affidavit in which he generally corroborated Patricia Larson's recollection of the incident:

"On Monday morning, November 15, as we resumed deliberations, I stated to the jury that I had driven both ways through the intersection that was the scene of the accident, and that I didn't know how many others had had the opportunity to do so. I stated that, in my opinion, it would have been difficult for Mrs. Amundson to see oncoming traffic whether the truck would have been there or not because there were trees and garbage cans obstructing the view. I also indicated that I realize conditions would have been different at the time of the accident because there would have been more foilage [*sic*] in the summer which would have further obstructed vision."

Keyes raised this instance of juror misconduct in his motion for a new trial. In its written memorandum denying the motion, the court stated:

"The plaintiff also complains of conduct of the jury. The Court interprets Rule 59(b)(2) to mean that only when the jury has arrived at a verdict by chance can Affidavits be used to prove the misconduct. Regardless of that, the Court has considered the Affidavits on either side and cannot agree that the verdict was arrived at by chance or the jurors committed any prejudicial acts affecting the verdict."

Thus, the court held that the affidavits were inadmissible, but went on to conclude that, even if they were admissible, Keyes was not prejudiced by the jury misconduct.

We will first address whether Rule 59(b)(2) prohibits the use of juror affidavits to prove juror misconduct other than a chance verdict. The trial court apparently considered only Rule 59(b)(2) in holding the affidavits inadmissible. However, we made it clear in *Kerzmann v. Rohweder,* 321 N.W.2d 84, 90–91 (N.D.1982), that the resolution of disputes over the use of juror affidavits in support of a motion for new trial requires consideration of Rule 59(b)(2) *and* Rule 606(b), N.D.R.Ev.

Rule 59(b) sets out the causes for new trial, and Subsection (2) provides:

" *(b) Causes for New Trial.* The former verdict or other decision may be vacated and a new trial granted on the application of a party aggrieved for any of the following causes materially affecting the substantial rights of the party:

✻ ✻ ✻ ✻ ✻ ✻

"2. Misconduct of the jury, and whenever any juror has been induced to assent to any general or special verdict or to a finding on any question submitted to

the jurors by the court by a resort to the determination of chance, the misconduct may be proved by the affidavit of any one of the jurors; ..."

Rule 606(b) sets out the standards for determining the competency of a juror as a witness when there is an inquiry into the validity of the verdict:

*"(b) Inquiry into Validity of Verdict or Indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the verdict of the jury was arrived at by chance. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes."

Although in *Kerzmann* we found it unnecessary under the facts of that case to reconcile the provisions of Rule 59(b)(2) and Rule 606(b), we did note the existence of an incongruity, particularly in light of the construction placed upon Rule 59(b)(2) in *Grenz v. Werre,* 129 N.W.2d 681 (N.D. 1964). In *Grenz,* there is language suggesting that the only instance where a juror affidavit may be used is to show that the verdict was arrived at by chance. *See Grenz, supra,* 129 N.W.2d at 692–93. This conflicts with the provision in Rule 606(b) which allows a juror to testify regarding receipt of extraneous prejudicial information or outside influence, in addition to arrival at a verdict by chance.

In the instant case, the trial court held that Rule 59(b)(2) prevents consideration of juror affidavits showing misconduct of the jury. We are thus squarely presented with

the issue left open in *Kerzmann,* and we must attempt to reconcile the provisions of Rule 59(b)(2) and Rule 606(b).

 Although rules of court are not legislative enactments, we treat them as legislative enactments to the extent that they should be interpreted in accordance with principles of statutory construction. *State v. Manke,* 328 N.W.2d 799, 801 (N.D. 1982). When two or more conflicting statutes or rules relate to the same subject matter in general, every effort should be made to give meaningful effect to each without rendering one or the other useless. *Litten v. City of Fargo,* 294 N.W.2d 628, 633 (N.D.1980); *Hospital Services, Inc. v. Brackey,* 283 N.W.2d 174, 177 (N.D.1979). In so doing, we attempt to give meaning to every paragraph, sentence, phrase, and word. *State ex rel. Olson v. Bakken,* 329 N.W.2d 575, 578 (N.D.1983); *Rothe v. S–N– Go Stores, Inc.,* 308 N.W.2d 872, 875 (N.D. 1981); *see* § 1–02–38(2), N.D.C.C. Statutes and rules are to be construed in a way which does not render them useless, and because the law neither does nor requires idle acts we will not assume that any statute or rule was intended to be useless rhetoric. *State v. Nordquist,* 309 N.W.2d 109, 115 (N.D.1981); *see* § 31–11–05(23), N.D.C.C.

 The application of Rule 59(b)(2) that is suggested by the trial court's opinion in this case would render that portion of Rule 606(b) relating to extraneous prejudicial information and outside influence inapplicable in civil cases. This was not our intent when we adopted Rule 606(b). Rather, we conclude that the provisions of Rule 59(b)(2) and Rule 606(b) can be read together, giving each meaningful effect.

Rule 59(b)(2) provides that a new trial may be granted for juror misconduct, and also that a chance verdict may be proved by the affidavit of any one of the jurors. There is nothing in the Rule itself which indicates that this is the *only* proper use of a juror affidavit.

The conflict, as we noted in *Kerzmann,* has been injected by the narrow interpreta-

tion of Rule 59(b)(2) in *Grenz*. The issue presented in *Grenz,* as characterized by the *Grenz* court, was: "[S]hould the jurors be permitted to impeach their verdict, by their affidavits, where the facts sought to be shown *inhere in the verdict itself?*" *Grenz, supra,* 129 N.W.2d at 692 [emphasis added]. The juror affidavits in *Grenz* were introduced to show that the jury had awarded damages to the plaintiff even though it did not find the defendant guilty of gross negligence, as required by the guest statute in effect at that time. Thus, the facts sought to be shown in the affidavits inhered in the verdict itself.

We do not believe it was the intent of the *Grenz* court to prohibit the use of juror affidavits to establish facts which did not inhere in the verdict. The *American Heritage Dictionary of the English Language* defines inhere as: "to be inherent or innate" and defines inherent as: "existing as an essential constituent or characteristic: intrinsic." The *Webster's Third New International Dictionary (1966)* also defines inhere as: "to be inherent: be a fixed element or attribute" and defines inherent as: "structural or involved in the constitution or essential character of something: belonging by nature or settled habit: intrinsic, essential." The actual holding of *Grenz* was that Rule 59(b)(2) prohibited proof of facts *inhering in the verdict* other than proof that the verdict was arrived at by chance.

It has long been the law of this state that a juror affidavit may be used to prove facts which do not inhere in the verdict. *James Turner & Sons v. Great Northern Railway Co.,* 67 N.D. 347, 272 N.W. 489 (1937). In *Turner,* this Court held that affidavits of jurors may be received for the purpose of avoiding a verdict to show any matter occurring during the trial or in the jury room which does not inhere in the verdict itself. There is no conflict between the rulings in *Grenz* and *Turner:* read together, these cases establish that a juror affidavit may be used to prove facts which do not inhere in the verdict, but may not be used to prove facts which inhere in the verdict

other than that the verdict was arrived at by chance.

The Explanatory Note to Rule 606(b) indicates that the Rule is consistent with *Grenz* and *Turner,* and was intended to comport with existing North Dakota law at the time of its adoption:

"Subdivision (b) comports with existing North Dakota law by prohibiting a juror from testifying as to the mental processes inherent in arriving at a verdict but allowing jurors to testify as to whether outside influences were brought to bear upon a juror, or whether the verdict was arrived at by chance.

In *Grenz v. Werre,* 129 N.W.2d 681 (N.D.1964), the Supreme Court, relying on Rule 59(b)(2), NDRCivP, stated that affidavits of jurors may be used to show that a verdict has been arrived at by chance, but not to show the mental processes of the jury in reaching their verdict. In *James Turner & Sons v. Great Northern Ry. Co.,* 67 N.D. 347, 272 N.W. 489 (1937), the Supreme Court stated that a juror may testify as to outside influences but not as to matters that inhere in the verdict.

The rationale of these cases, and of this rule, is to further free deliberation in the jury room by protecting from disclosure the manner in which a verdict was reached, and to promote finality of verdicts. At the same time considerations must be given to the arrival of a just result in each particular case. Where a verdict is reached because of extraneous, prejudicial information or outside influence, much of the reason for disallowing a juror to testify disappears, and the balance is weighted in favor of obtaining justice in the individual case...."

We hold that, pursuant to Rule 606(b), a juror affidavit may be used to show juror misconduct based upon extraneous prejudicial information, outside influence, or a chance verdict, and such misconduct may be grounds for a new trial pursuant to Rule 59(b)(2). We refuse to construe *Grenz* as prohibiting the use of juror affi-

davits to prove facts which do not inhere in the verdict.

Having concluded that Rule 606(b) authorizes use of an affidavit showing juror misconduct resulting in extraneous prejudicial information reaching the jury in ruling on a motion for new trial, we must next consider the scope of Rule 606(b) as applied in the instant case. The trial court held that Rule 59(b)(2) prohibited consideration of the affidavits in this case. The court, however, also stated that, even after considering the affidavits, it could not agree "that the verdict was arrived at by chance or the jurors committed any prejudicial acts affecting the verdict."

The juror affidavits submitted in support of and in opposition to the motion for new trial contained statements in addition to the previously quoted segments relating to the unauthorized views of the accident scene. The affidavits of the foreman, Larry Lynne, and Tony Novak, another juror, suggest that the extraneous information relayed to the jury by Lynne had little or no effect on the final verdict. It is clear that the trial court based its finding of no prejudice on these statements in the Lynne and Novak affidavits. Our review of Rule 606(b) leads us to the conclusion that the parts of the affidavits which show the juror misconduct were admissible under Rule 606(b), but the statements relating to the effect of the misconduct on the jury were not.

 Rule 606(b) was adopted nearly verbatim from Rule 606(b) of the Federal Rules of Evidence.[3] Therefore, we may consider cases construing and interpreting Rule 606(b), Fed.R.Evid., as an aid in applying our own Rule. *State v. Manke, supra,* 328 N.W.2d at 802.

The federal courts which have construed Rule 606(b) have consistently held that jurors may testify regarding the receipt of extraneous prejudicial information by the jury or improper outside influence, but they may *not* testify to its subjective effect

on the verdict or on their individual deliberations. *See, e.g., Carson v. Polley,* 689 F.2d 562, 580–81 (5th Cir.1982); *United States v. Bruscino,* 687 F.2d 938, 941 (7th Cir.1982) (en banc), *cert. denied,* —— U.S. ——, 103 S.Ct. 1205, 75 L.Ed.2d 446, and —— U.S. ——, 103 S.Ct. 1235, 75 L.Ed.2d 468 (1983); *United States v. Brooks,* 677 F.2d 907, 912–13 (D.C.Cir.1982); *United States v. Bagnariol,* 665 F.2d 877, 884–85 (9th Cir.1981), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982); *United States v. Bassler,* 651 F.2d 600, 603 (8th Cir.), *cert. denied,* 454 U.S. 944, 102 S.Ct. 485, 70 L.Ed.2d 254 (1981), and 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 305 (1982); *United States v. Greer,* 620 F.2d 1383, 1385 (10th Cir.1980); *United States v. Williams,* 613 F.2d 573, 575–76 (5th Cir.), *cert. denied,* 449 U.S. 849, 101 S.Ct. 137, 66 L.Ed.2d 60 (1980); *United States v. Duncan,* 598 F.2d 839, 866 (4th Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). State jurisdictions which have adopted Rule 606(b) are in accord. *See, e.g., Kirby v. Rosell,* 133 Ariz. 42, 648 P.2d 1048, 1051 (Ct.App.1982); *State v. Cox,* 322 N.W.2d 555, 559 (Minn. 1982); *State v. Woodward,* 210 Neb. 740, 316 N.W.2d 759, 762 (1982). Testimony as to the subjective effect of extrinsic material on the verdict or deliberations is prohibited, whether such testimony would support or negate the conclusion of actual prejudice. *United States v. Bassler, supra,* 651 F.2d at 603.

 Once the court determines from the affidavits that extraneous prejudicial information has improperly reached the jury or that outside influence was improperly brought to bear upon any juror, the court must apply an *objective* standard to determine its prejudicial effect. We hold that the appropriate standard is for the trial court to determine if there is a reasonable possibility that the extrinsic material could have affected the verdict, and, if so, a new trial is required. *United States v.*

---

**3.** Our Rule 606(b) differs from the federal rule in one respect: the addition of disclosure of a

chance verdict as a proper subject of inquiry.

*Bagnariol, supra,* 665 F.2d at 885; *Lanza v. Poretti,* 537 F.Supp. 777, 782–83 (E.D.Pa. 1982); *United States v. Castello,* 526 F.Supp. 847, 850 (W.D.Tex.1981). In so doing, the court is to consider the possible prejudicial effect on a hypothetical average jury. *State v. Cox, supra,* 322 N.W.2d at 559; *United States v. Castello, supra,* 526 F.Supp. at 850. Applying the foregoing standard to the facts in this case, we conclude that there is a reasonable possibility that the extrinsic information could have affected the verdict of a hypothetical average jury.

There are several factors which lead to our conclusion that there is a reasonable possibility that the extraneous information in this case could have affected the verdict of a hypothetical average jury. Of particular concern is the fact that the extraneous information related to what was perhaps the essential issue in the entire case, the effect which the parked truck had on the line of vision of Keyes and Amundson. The condition of the intersection and the line of vision of the drivers were crucial facts in this case. Lynne admits in his affidavit that he informed the jurors, based upon his view of the intersection, that in his opinion "it would have been difficult for Mrs. Amundson to see oncoming traffic whether the truck would have been there or not because there were trees and garbage cans obstructing the view." He then went on to speculate that Amundson's view would have been further obstructed at the time of the accident because there would have been more foliage at that time. The defendants in effect had a "witness" in the jury room "testifying" that the location of the parked truck had no effect on Amundson's line of vision, and that her vision would have been obstructed by garbage cans and trees. Keyes was unaware of this "testimony" at the time, and there was no opportunity to scrutinize the "testimony," cross-examine the "witness," or contend in argument against his findings. *See King v. Barrett,* 185 N.W.2d 210, 213 (Iowa 1971).

Furthermore, the trial court had previously denied a motion to have the jurors view the accident scene. The basis for this denial was that conditions at the intersection had changed between the time of the accident and the time of trial. This lends further support to the conclusion that the jurors' unauthorized views and reports to the other jurors were prejudicial.

We also note that the unauthorized view in this case was not a "casual" view. Lynne stated to the other jurors that he drove "both ways through the intersection," and that he "didn't know how many others had had the opportunity to do so." Juror Larson, in her affidavit, claims Lynne stated to the jurors that he had investigated the scene of the accident "so that he could report what he found for those who hadn't had time." These statements clearly indicate that Lynne's unauthorized view of the scene was far from casual, and was conducted for the purpose of acquiring information and reporting back to the jury. Undoubtedly there will be situations, particularly in rural communities, where views of the accident scene by jurors are unavoidable. It is foreseeable that jurors may be called upon to sit on cases where the accident occurred at the major intersection in town, or even in front of the courthouse. A casual view by jurors in such cases is inevitable; however, without more, it is not likely to affect the verdict. A very different situation is presented, however, when a juror intentionally investigates the scene to acquire additional information and then reports his findings and opinions to the other jurors. *King v. Barrett, supra,* 185 N.W.2d at 213; *Goff v. Kinzle,* 148 Mont. 61, 417 P.2d 105, 107 (1966).

Finally, the juror misconduct in this case occurred after the case was submitted to the jury and while the jury deliberated, and was not discovered until after the verdict was rendered. Thus, there was no opportunity to attempt to "cure" the misconduct. Had the misconduct been discovered before the verdict was rendered, the trial court could have conducted a voir dire examination of the jurors to determine the nature

of the extraneous information and carefully instructed the jurors to decide the case on the evidence presented in court. *See Basin Electric Power Cooperative v. Paulson,* 289 N.W.2d 548, 552 (N.D.1980); *State v. Cox, supra,* 322 N.W.2d at 559. Because the misconduct was not discovered until after the verdict had been rendered, there was no opportunity to ameliorate the prejudicial impact of the extraneous information. *See State v. Cox, supra.*

Applying the appropriate legal standards to the facts presented in this case, we conclude that juror misconduct occurred (albeit innocently) which resulted in extraneous prejudicial information reaching the jury, and that there is a reasonable possibility that such information could have affected the verdict of a hypothetical average jury. We therefore conclude that the trial court abused its discretion in denying the motion for a new trial.

We vacate the judgment, reverse the order denying the motion for new trial, and remand for a new trial.

VANDE WALLE, PEDERSON, GIERKE and SAND, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I concur in the majority opinion. But I do not believe the opinion should be construed as an invitation to losing parties to interview jurors with the hope that one or more of them may have made a casual remark in the jury room concerning some facet of the case not in evidence for the purpose of obtaining a new trial because of juror misconduct. The majority opinion indicates that once extraneous prejudicial information has improperly reached the jury the trial court must only determine that there is a reasonable possibility that the extrinsic material could have affected the verdict in order that a new trial is required. I believe that "reasonable possibility" must be considerably more than a remote chance that the extrinsic material affected the verdict and, in my estimation, should approach a "probability" that the material did, in fact, influence the verdict before a new

trial should be granted because of juror misconduct.

SAND, J., concurs.