# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2024 ND 215

Lorry Van Chase,          Petitioner and Appellant

v.

State of North Dakota,          Respondent and Appellee

### No. 20240024

Appeal from the District Court of Rolette County, Northeast Judicial District, the Honorable Michael P. Hurly, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice, in which Justices Crothers and McEvers joined. Justice Bahr filed a specially concurring opinion, in which Chief Justice Jensen joined.

Lorry Van Chase, self-represented, Bismarck, N.D., petitioner and appellant; submitted on brief.

Brian D. Grosinger, State's Attorney, Rolla, N.D., for respondent and appellee; submitted on brief.

**Chase v. State**
**No. 20240024**

**Tufte, Justice.**

[¶1]   Lorry Van Chase appeals from a district court order denying his amended application for postconviction relief. Chase argues the district court erred in concluding that: (1) res judicata and the statute of limitations bar Chase's application for relief based on newly discovered evidence; and (2) Chase did not meet his evidentiary burden regarding his allegation of improper jury contact. We affirm the district court's order.

I

[¶2]   In 2014, Chase was convicted of gross sexual imposition and sentenced to forty years' imprisonment. We affirmed the conviction on direct appeal. *State v. Chase*, 2015 ND 234, 869 N.W.2d 733.

[¶3]   The application denied by the district court was Chase's third application for postconviction relief. In his first application for postconviction relief, Chase argued that he received ineffective assistance from his trial counsel and that his trial counsel failed to disclose a conflict of interest. After we reversed summary dismissal and remanded for an evidentiary hearing, *Chase v. State*, 2017 ND 192, 899 N.W.2d 280, the district court denied relief. Chase appealed, and we summarily affirmed because Chase's failure to file a transcript of the evidentiary hearing precluded any meaningful review. *Chase v. State*, 2018 ND 154, 913 N.W.2d 774.

[¶4]   Chase then sought relief from the denial of his first application under N.D.R.Civ.P. 60(b). The district court summarily dismissed, concluding the motion was actually a second application for postconviction relief barred by res judicata and misuse of process. We affirmed the district court's recharacterization of the motion as a second postconviction application, but reversed the summary dismissal because the court had not provided notice to Chase. *Chase v. State*, 2019 ND 214, 932 N.W.2d 529. We remanded for the district court to review the application and consider appointment of counsel.

1

[¶5]   Chase then filed his third application for postconviction relief, which the district court summarily dismissed. On appeal, we reversed and remanded, because the district court's treatment of the State's answer as a motion for summary disposition was inconsistent with the procedure for summary disposition required by N.D.C.C. § 29-32.1-09. *Chase v. State*, 2021 ND 206, 966 N.W.2d 557.

[¶6]   Following remand, Chase filed an amended application for postconviction relief, the denial of which we consider in this appeal. Under N.D.C.C. § 29-32.1-01(3)(a)(1), he alleged two grounds of newly discovered evidence: a medical record created eight days after the alleged incident that is inconsistent with the victim's trial testimony, and an inappropriate contact between a uniformed person and the jury during its deliberations.

[¶7]   In December 2023, the district court held an evidentiary hearing on Chase's allegations of newly discovered evidence. Regarding the medical record, Chase conceded that—upon review of the evidentiary hearing held on Chase's first application for postconviction relief—it was clear that Chase's trial attorney had in fact received the medical record before trial. Although Chase argued that his trial attorney's failure to use the medical record to impeach the victim was "a big issue for an ineffective assistance of counsel [claim]," he conceded that "by definition, we can't call it newly discovered evidence." The State also offered the testimony of Kelly Albertson, who was an assistant in the prosecutor's office during Chase's criminal case, as foundation for two documents showing that Chase's trial attorney had received the medical record before trial.

[¶8]   Regarding the allegation of improper jury contact, Chase offered the following testimony from a juror who had been contacted by an investigator retained by Chase:

> He asked me a lot of questions. I just told him that — what I thought about the case that there was not a lot of evidence to go on. It was a he-said/she-said type of involvement. I did tell him that one of the — I don't know if it was a bailiff, I don't know if it was police officer, I really can't recall — but someone did come into the room and said that we were not allowed to have a hung jury; it had to be a yes or a no.

2

On direct examination, the juror testified that while she remembered former Sheriff Rod Trottier and current Sheriff Nate Gustafson being present at trial, she could not recall with certainty whether either of them was the person in law enforcement uniform who had entered the jury room:

> Juror:    I — I recall Nate Gustafson being there, and I remember a partial [sic] of the Trottier cop, but I don't remember which one it was.
>
> Chase:    Okay. Were they in uniform?
>
> Juror:    Yes.
>
> Chase:    So they were in a law enforcement officer's uniform, is what you're saying?
>
> Juror:    Yes.
>
> Chase:    Okay. And they entered the jury room and in — and told you it had to be a unanimous vote?
>
> Juror:    Yes.

[¶9] On redirect, the juror clarified that although she had identified Trottier and Gustafson as possibilities, she could not say with certainty that either of them was the uniformed person who had entered the jury room:

> Chase:    You've testified that it's Gustafson or Trottier, but I think, when I was asking you, you recall law enforcement officer's uniform, correct?
>
> Juror:    Yes. Yes.
>
> Chase:    You're not 100 percent positive it was that one — or Gustafson or Trottier; is that true?
>
> Juror:    Yes.
>
> Chase:    Okay. But that — you're — so you're speculating when you say those two names?
>
> Juror:    Yes. Because it's been so long ago I honestly can't remember. But I do remember a uniform coming into the deliberating room.

[¶10] The juror testified that four jurors, including herself, were undecided when the uniformed person entered the room and informed them there could

not be a hung jury. She stated that she would have remained undecided had the uniformed person not stated that the jury had to reach a unanimous decision. She further testified that she believed the uniformed person's statement similarly influenced other jurors to make a decision. No other jurors testified. In a colloquy with the district court, Chase's counsel stated that Chase's investigator had interviewed "almost all" of the jurors, but "it was so long ago they don't recall much of anything about the trial."

[¶11] When asked why she did not report this incident, the juror explained: "Honestly, I didn't know what the protocol was for that, so I didn't know at the time." She also testified that she had not discussed the incident with anyone until she was contacted by Chase's investigator.

[¶12] Chase testified in support of his application, stating that he learned about the alleged incident of improper jury contact from his daughter-in-law. Chase stated that his daughter-in-law disclosed this information in 2019 while visiting him in prison, but that he did not know where she had learned this information.

[¶13] The State offered the testimony of Trottier and Gustafson in support of its contention that the alleged improper jury contact did not occur. Trottier testified that he was sheriff at the time of Chase's trial; he was present for Chase's trial but did not enter the jury room or speak to the jury. Trottier also testified that he knew from his law enforcement training that such contact with the jury is prohibited. On cross-examination, Trottier stated that, as sheriff, he generally employed five or six deputies with various levels of law enforcement experience, conceding that, as such, it was possible that he had employed relatively inexperienced deputies at the time of Chase's trial. Trottier testified that Gustafson was not a sheriff's deputy at the time of Chase's trial, an assertion that he maintained on redirect.

[¶14] Gustafson testified that he was, in fact, a sheriff's deputy at the time of Chase's trial and that he was in charge of security at the courtroom entrance. He stated that he did not enter the jury room and speak to the jury, and that he understood the consequences of such improper jury contact from his law enforcement training.

4

[¶15] The district court denied Chase's application, finding the juror's testimony not credible and concluding that res judicata and the statute of limitations barred relief based on newly discovered evidence.

II

[¶16] Postconviction relief proceedings are governed by the North Dakota Rules of Civil Procedure. *Koon v. State*, 2023 ND 247, ¶ 20, 1 N.W.3d 593. The applicant bears the burden of establishing grounds for relief. *Id.* Questions of law are fully reviewable. *Id.* We set aside the district court's findings of fact only if we conclude they are clearly erroneous. N.D.R.Civ.P. 52(a)(6). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake has been made." *Morris v. State*, 2019 ND 166, ¶ 6, 930 N.W.2d 195.

[¶17] On appeal, Chase argues the district court erred in concluding that res judicata and the statute of limitations bar his claim for relief, because the State waived these affirmative defenses by not raising them in its answer to Chase's application. We agree. Res judicata and statute of limitations are affirmative defenses that a party waives if it does not raise them in its responsive pleading. *Lehman v. State,* 2014 ND 103, ¶¶ 3, 7-8, 847 N.W.2d 119 (holding that the two-year time limit for postconviction relief applications is "akin to" a statute of limitations, that a statute of limitations defense in a civil proceeding is an affirmative defense, and that affirmative defenses are waived if not pleaded); *Johnson v. State*, 2010 ND 213, ¶ 10, 790 N.W.2d 741 (holding that res judicata is an express affirmative defense under N.D.C.C. § 29-32.1-12(3) to be pleaded by the State).

[¶18] The district court erred by dismissing Chase's application *sua sponte* on grounds waived by the State. *Atkins v. State*, 2021 ND 83, ¶ 15, 959 N.W.2d 588. Despite this error, however, we affirm, because the district court reached the correct result for the wrong reason. "We will not set aside a district court's decision simply because the court applied an incorrect reason, if the result is the same under the correct law and reasoning." *Myers v. State*, 2017 ND 66, ¶ 10, 891 N.W.2d 724.

[¶19] Because Chase's application cannot be properly dismissed on threshold determinations of res judicata and statute of limitations, we consider his assertion of "newly discovered evidence" on the merits as grounds for relief under N.D.C.C. § 29-32.1-01(1)(e). The question on the merits is very similar, although not identical, to the threshold questions of res judicata and statute of limitations. As the district court used it in the context of an exception to the statute of limitations, the phrase "newly discovered evidence" requires the applicant to "establish that the petitioner did not engage in the criminal conduct for which the petitioner was convicted." N.D.C.C. § 29-32.1-01(3)(a)(1); *Bridges v. State*, 2022 ND 147, ¶¶ 12-14, 977 N.W.2d 718 (explaining that the burden to avoid statute of limitations is higher than the burden to satisfy Rule 33 test). As grounds for relief, an applicant must show "[e]vidence, not previously presented and heard, exists requiring vacation of the conviction or sentence in the interest of justice." N.D.C.C. § 29-32.1-01(1)(e). We review postconviction relief applications asserting new evidence as grounds for relief under N.D.C.C. § 29-32.1-01(1)(e) (evidence "not previously presented and heard") the same as N.D.R.Crim.P. 33 motions for new trial based on newly discovered evidence. *O'Neal v. State*, 2023 ND 109, ¶ 4, 992 N.W.2d 14. A district court may, "if the interest of justice so requires," grant a defendant a new trial "based on newly discovered evidence." N.D.R.Crim.P. 33(a), (b)(1). Our standard for granting a new trial is well-established:

> Under N.D.R.Crim.P. 33(a), the trial court may grant a new trial to the defendant if required in the interests of justice. To prevail on a motion for a new trial on the ground of newly discovered evidence, the defendant must show (1) the evidence was discovered after trial, (2) the failure to learn about the evidence at the time of trial was not the result of the defendant's lack of diligence, (3) the newly discovered evidence is material to the issues at trial, and (4) the weight and quality of the newly discovered evidence would likely result in an acquittal. A motion for new trial based upon newly discovered evidence rests within the discretion of the trial court, and we will not reverse the court's denial of the motion unless the court has abused its discretion. If the newly discovered evidence is of such a nature that it is not likely to be believed by the jury or to change the results of the original trial, the court's denial of the new trial motion is not an abuse of discretion.

> A trial court abuses its discretion if it acts arbitrarily, unreasonably, unconscionably, or when its decision is not the product of a rational mental process leading to a reasoned decision.

*Kovalevich v. State*, 2018 ND 184, ¶ 5, 915 N.W.2d 644.

[¶20] The district court's finding that Chase's trial attorney had the medical record before trial bars Chase's application for relief under N.D.C.C. § 29-32.1-01(1)(e). Chase conceded at the December 2023 evidentiary hearing that: (1) his trial attorney had received the medical record before trial; (2) his trial attorney's failure to use the medical record to impeach the victim at trial was discussed during the evidentiary hearing on Chase's first application for postconviction relief; and (3) as such, "by definition, we can't call it newly discovered evidence." Applying the Rule 33(a) standard, Chase's application fails at the first element, because the medical record was discovered before trial.

[¶21] The district court relied on incorrect reasoning by denying Chase's application for failure to satisfy the newly discovered evidence exception to the statute of limitations. But the result is the same when the medical record is considered as grounds for relief under the Rule 33 standard. The district court's order properly denied Chase's application for relief based on newly discovered evidence.

## III

[¶22] Chase also argues that the district court erred in concluding he did not meet his evidentiary burden regarding his allegation of improper jury contact. After a hearing, the district court found the juror's testimony not credible.[1] In

---

[1] Neither party argued to the district court or on appeal the issue of whether the juror's testimony comports with N.D.R.Ev. 606(b). Under N.D.R.Ev. 606(b), "'jurors may testify regarding the receipt of extraneous prejudicial information by the jury or improper outside influence, but they may *not* testify to its subjective effect on the verdict or on their individual deliberations.'" *State v. Hidanovic*, 2008 ND 66, ¶ 13, 747 N.W.2d 463 (quoting *Keyes v. Amundson*, 343 N.W.2d 78, 85 (N.D. 1983)).

support of its finding, the district court cited a lack of corroboration for the allegation and inconsistencies between Chase's statements and the juror's testimony. The district court noted that the only specifics the juror could remember about the person who entered the jury room were that the person was in uniform and told the jurors they had to reach a unanimous decision. Chase did not offer testimony from any other juror about this alleged improper jury contact. The district court further noted that Chase's own statement in a 2022 affidavit was inconsistent with his and the juror's testimony at the evidentiary hearing. In the affidavit, Chase stated that his daughter-in-law informed him in 2019 of the improper jury contact and that she had learned this information from the juror who testified. At the evidentiary hearing, however, the juror stated that she had not mentioned the improper contact to anyone until she was contacted by Chase's investigator in 2023. She remembered that Trottier and Gustafson were at the trial, but she could not remember whether either of them was the uniformed person who entered the jury room. In contrast, Trottier and Gustafson testified that they did not enter the jury room and make a statement to the jury, and that they knew from their law enforcement training that they were prohibited from doing so. Because there is evidence in the record to support its finding, the district court did not clearly err in finding that the alleged improper jury contact did not occur.

[¶23] Chase argues that the district court erred in placing the burden on him to prove that the improper jury contact occurred and instead should have analyzed his claim under the *Remmer* framework:

> In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Remmer v. United States*, 347 U.S. 227, 229 (1954). What Chase overlooks, however, is that to trigger the presumption of prejudice, he must first establish that the

improper contact actually occurred. Here, the district court made the threshold determination that the juror's testimony was not credible and that the improper contact with the jury did not occur. This threshold determination is a factual finding. We conclude it is supported by the record and it is not clearly erroneous.

IV

[¶24] For the reasons stated above, we affirm the district court's order denying Chase's application for postconviction relief.

[¶25]   Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte


**Bahr, Justice, specially concurring.**

[¶26]  I concur with the majority's affirmance of the district court's order denying Chase's application for postconviction relief. I also concur with the majority's analysis, except its conclusions relating to the "statute of limitations" being an "affirmative defense" waived by the State. *See* Majority, at ¶¶ 17-19.

[¶27]  I recognize the majority's conclusion the two-year period in N.D.C.C. § 29-32.1-01(2) is an affirmative defense is supported by precedent. *See Vogt v. State*, 2022 ND 163, ¶ 7, 978 N.W.2d 727; *Comes v. State*, 2018 ND 54, ¶ 9, 907 N.W.2d 393; *Moe v. State*, 2015 ND 93, ¶ 10, 862 N.W.2d 510; *Lehman v. State*, 2014 ND 103, ¶ 3, 847 N.W.2d 119. However, I question the correctness of that precedent based on N.D.R.Civ.P. 81(a) and the plain language of the Uniform Postconviction Procedure Act, specifically N.D.C.C. §§ 29-32.1-01, 29-32.1-06, and 29-32.1-12. Although I would like this Court to reconsider whether the two-year period in section 29-32.1-01(2) is an affirmative defense, the parties did not brief the issue. Because the parties did not brief the issue, I agree this Court should not address it at this time. *Montana-Dakota Utils. Co. v. Behm*, 2020 ND 234, ¶ 11, 951 N.W.2d 208 ("We do not address inadequately briefed issues.").

[¶28] I specially concur to note I question the accuracy of the majority's conclusion, and the precedent it is based on, that the two-year period in N.D.C.C. § 29-32.1-01(2) is an affirmative defense.

[¶29]  Jon J. Jensen, C.J.
          Douglas A. Bahr